**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

B.K., by her next friend Margaret
Tinsley; B.T., by their next friend
Jennifer Kupiszewski; A.C.-B., by
their next friend Susan Brandt; M.C.-
B., by their next friend Susan Brandt;
D.C.-B., by their next friend Susan
Brandt; J.M., by their next friend
Susan Brandt,

          *Plaintiffs-Appellees*,

        v.

JAMI SNYDER, in her official capacity
as Director of the Arizona Health
Care Cost Containment System,
         *Defendant-Appellant.*

No. 17-17501

D.C. No.
2:15-cv-00185-
ROS

| | |
|---|---|
| B.K., by her next friend Margaret Tinsley; B.T., by their next friend Jennifer Kupiszewski; A.C.-B., by their next friend Susan Brandt; M.C.-B., by their next friend Susan Brandt; D.C.-B., by their next friend Susan Brandt; J.M., by their next friend Susan Brandt, *Plaintiffs-Appellees*, v. GREGORY MCKAY, in his official capacity as Director of the Arizona Department of Child Safety, *Defendant-Appellant.* | No. 17-17502 D.C. No. 2:15-cv-00185-ROS OPINION |

Appeal from the United States District Court
for the District of Arizona
Roslyn O. Silver, District Judge, Presiding

Argued and Submitted January 17, 2019
San Francisco, California

Filed April 26, 2019

Before:  J. Clifford Wallace and Michelle T. Friedland,
Circuit Judges, and Lynn S. Adelman,* District Judge.

Opinion by Judge Wallace;
Partial Concurrence and Partial Dissent by Judge Adelman

---

* The Honorable Lynn S. Adelman, United States District Judge for
the Eastern District of Wisconsin, sitting by designation.

# SUMMARY[**]

## Civil Rights

The panel affirmed in part and vacated in part the district court's class certification order and remanded for further proceedings in an action brought by children in the Arizona foster care system against directors of the Arizona Department of Child Safety and the Arizona Health Care Cost Containment System alleging that Arizona's state-wide policies and practices deprived them of required medical and other services, and that this subjected them to a substantial risk of harm and violated the Medicaid Act.

Plaintiffs alleged that defendants' state-wide policies and practices violated their rights to due process under the Fourteenth Amendment, family integrity under the First, Ninth, and Fourteenth Amendments, and medical services under the Medicaid Act. The district court certified a General Class of all children who are or will be in the Department of Child Safety's custody due to a report or suspicion of abuse or neglect. The district court further certified two subclasses: (1) a Non-Kinship Subclass consisting of members in the General class who are not placed in the care of an adult relative or person with a significant relationship with the child; and (2) a Medicaid Subclass consisting of all members of the General class who were entitled to services under the federal Medicaid statute.

---

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

Affirming the district court's certification of the General Class, the panel first held that class representative B.K. had standing to press her due process claims given that she has serious medical diagnoses, presented evidence that she has not received adequate medical care or appropriate placements in the past and presented evidence of a risk of similar future harms. The panel then held that the district court did not err or abuse its discretion in its ruling that the class had commonality and typicality and that uniform injunctive relief was available. The panel concluded that the district court properly grounded its commonality determination in the constitutionality of statewide policies and practices that could be properly litigated in a class setting. Addressing the typicality requirement, the panel held that B.K. had demonstrated with evidence that she was subject to statewide policies and practices that applied to every member of the class. Finally, the panel held that a single, indivisible injunction ordering state officials to abate those policies and practices would provide relief to each member of the class, thus satisfying Rule 23(b)(2).

Affirming the district court's certification of the Non-Kinship Subclass, the panel held that B.K. had standing to bring the subclass's due process claims. The panel then held that by identifying certain statewide practices, such as excessive use of emergency shelters and group homes, the district court satisfied the commonality, typicality, and uniformity of injunctive relief factors. The panel concluded that the district court would be able to determine whether defendants have an unconstitutional practice of placing children in substantial risk of harm by evaluating these practices as a whole, rather than as to each individual class member.

Addressing the Medicaid Subclass, the panel held that the materials in the record supported B.K.'s standing. The panel held that the district court abused its discretion by certifying the Medicaid Subclass based on an apparent misconception of the legal framework for such a claim. The panel noted that in the due process context relevant to the General and Non-Kinship Subclasses, proving a substantial risk of harm was all that was necessary to prove a claim. A claim under the Medicaid Act, however, must be based on actions that actually violate the Act's requirements. The panel further determined that the district court failed to make a factual finding that every subclass member was subject to an identical significant risk of a future Medicaid violation that would support injunctive relief. The panel therefore vacated the Medicaid Subclass and remanded for further proceedings.

Concurring in part and dissenting in part, Judge Adelman concurred in all parts of the majority's opinion except the portion addressing the Medicaid Subclass. Judge Adelman stated that the answer to the legal question of whether exposure to a risk of harm violates the Medicaid statute did not affect class certification in this case, where the class sought only injunctive relief. Moreover, Judge Adelman stated that the district court made findings of fact that supported its decision to certify the Medicaid Subclass, and those findings were not clearly erroneous.

## COUNSEL

Robert L. Ellman (argued) and David Simpson, Ellman Law Group LLC, Phoenix, Arizona; Nicholas D. Acedo (argued) and Daniel P. Struck, Struck Love Bojanowski & Acedo P.L.C., Chandler, Arizona; Daniel P. Quigley, Cohen Dowd Quigley P.C., Phoenix, Arizona; Logan T. Johnston, Johnston Law Offices, Phoenix, Arizona; for Defendants-Appellants.

Harry Frischer (argued) and Aaron Finch, Children's Rights Inc., New York, New York; Anne C. Ronan and Daniel J. Adelman, Arizona Center for Law in the Public Interest, Phoenix, Arizona; Andrea J. Diggs, Thomas D. Ryerson, Joel W. Nomkin, Shane R. Swindle, and Joseph E. Mais, Perkins Coie LLP, Phoenix, Arizona; for Plaintiffs-Appellees.

Marsha L. Levick, Juvenile Law Center, Philadelphia, Pennsylvania, for Amici Curiae Juvenile Law Center, Bluhm Legal Clinic, Center for Children's Law & Policy, Center for Public Representation, Children & Family Justice Center, Children's Advocacy Institute, Children's Defense Fund New York, Civitas Childlaw Center, Columbia Legal Services, Disability Rights Pennsylvania, Harvard Law School Child Advocacy Program, Impact Fund, National Association of Counsel for Children, National Center for Youth Law, National Health Law Program, National Women's Law Center, Nebraska Appleseed, Robert F. Kennedy Human Rights, Rutgers School of Law—Camden Children's Justice Clinic, Washington Lawyers' Committee for Civil Rights and Urban Affairs, and Youth Law Center.

Corene T. Kendrick, Prison Law Office, Berkeley, California; Amanda W. Shanor and David C. Fathi,

American Civil Liberties Union Foundation, Washington, D.C.; Kathleen E. Brody, ACLU Foundation of Arizona, Phoenix, Arizona; for Amici Curiae American Civil Liberties Union, American Civil Liberties Union of Arizona, and Prison Law Office.

Andrew R. Kaufman, Lieff Cabraser Heimann & Bernstein LLP, Nashville, Tennessee; Katherine I. McBride, Jason L. Lichtman, and Jonathan D. Selbin, Lieff Cabraser Heimann & Bernstein LLP, New York, New York; Elizabeth J. Cabraser, Lieff Cabraser Heimann & Bernstein LLP, San Francisco, California; for Amici Curiae Administrative Law, Civil Procedure, and Federal Courts Professors.

## OPINION

WALLACE, Circuit Judge:

The Arizona Department of Child Safety and the Arizona Health Care Cost Containment System are responsible for delivering health care and other services to the thousands of children in the Arizona foster care system. In 2015, ten of those children brought an action against the directors of these agencies for alleged violations of the federal Constitution and the Medicaid Act, alleging that Arizona's state-wide policies and practices deprived them of required medical services, among other things, and thus subjected them to a substantial risk of harm. Based on these claims, the district court certified a class of all children who are or will be in the Department of Child Safety's custody, along with two subclasses. The Director of the Department of Child Safety and the Director of the Health Care Cost Containment System timely sought review of those class certification decisions, and we accepted their interlocutory appeals. We

have jurisdiction under 28 U.S.C. § 1292, and we affirm in part, vacate in part, and remand for further proceedings.

## I.

## A.

Gregory McKay is the Director of the Arizona Department of Child Safety (DCS). DCS's primary purpose is to "protect children," by investigating reports of abuse and neglect, establishing foster care placements, working with law enforcement, maintaining permanency, and providing treatment to families. Ariz. Rev. Stat. (ARS) § 8-451. Pursuant to DCS's statutory framework, DCS investigates reports of threats to child safety and may remove children from their homes by superior court order, consent of the child's guardian, or where "clearly necessary to protect the child because exigent circumstances exist." ARS § 8-821(A), (D). DCS may also petition to commence dependency proceedings in Arizona state court by alleging that a child is dependent. ARS § 8-841(A). On the filing of such a petition, the Arizona court may issue "temporary orders necessary to provide for the safety and welfare of the child," ARS § 8-841(F), and assumes continuing jurisdiction "over all matters affecting dependent children," *In re Appeal in Maricopa Cty. Juvenile Action No. JD-6236*, 874 P.2d 1006, 1008 (Ariz. Ct. App. 1994). The court then holds a dependency hearing to adjudicate whether the child is dependent. ARS § 8-844. If the child is dependent, the court will typically place the child in DCS's legal custody, triggering DCS's legal obligations to the child. *See, e.g.*, *Oscar F. v. Dep't of Child Safety*, 330 P.3d 1023, 1025 (Ariz. Ct. App. 2014) ("Since the day after the dependency petition was filed, the children have been temporary wards of the Court, committed to the legal care, custody and control of DCS" (alterations and internal quotation marks omitted)).

Jami Snyder is Director of the Arizona Health Care Cost Containment System (AHCCCS). AHCCCS administers Arizona's Medicaid program, which provides medical services to various categories of individuals within the state. Medicaid is "a cooperative federal-state program through which the federal government provides financial assistance to states so that they can furnish medical care to low-income individuals." *Cal. Ass'n of Rural Health Clinics v. Douglas*, 738 F.3d 1007, 1010 (9th Cir. 2013). Among those individuals are foster children within the state's care. *See* 42 U.S.C. § 1396a(a)(10)(A)(i)(I). Medicaid is jointly financed by the federal and state governments and is administered by state governments through state "plans," which are approved by the federal Secretary of Health and Human Services. *Cal. Ass'n of Rural Health Clinics*, 738 F.3d at 1010. Once a state joins the Medicaid system, it must comply with federal statutory and regulatory requirements to ensure that its plan provides all required healthcare services. *Id.* These requirements may be court-enforced through a private claim by eligible Medicaid beneficiaries, when such a claim exists. *Id.* at 1013. We refer to McKay and Snyder collectively as "the Directors" unless the context otherwise requires, without losing sight of their unique statutory duties and the distinct claims asserted against each.

The ten original plaintiffs in this case were foster children in Arizona's care. They initiated this action in February 2015, alleging that the Directors had state-wide policies and practices that violated their rights to due process under the Fourteenth Amendment, family integrity under the First, Ninth, and Fourteenth Amendments, and medical

services under the Medicaid Act.[1] The plaintiffs' original goal was to maintain a class action with themselves as class representatives, but over the next two-plus years of litigation eight plaintiffs were adopted or otherwise removed from the foster care system, leaving only two at the time of class certification. Since class certification, moreover, an additional plaintiff appears to have aged out of the proposed classes. We therefore discuss plaintiff B.K. as the representative class member.[2]

B.K. alleges that that she has been deprived of necessary health care, separated from her siblings, deprived of family contact, and placed in inappropriate care environments. B.K. alleges that these deprivations amount to violations of her right to due process under the Fourteenth Amendment and of her right to reasonably prompt early and periodic screening, diagnostic, and treatment services (EPSDT services) under the Medicaid Act. B.K. also alleges that these violations are caused by specified state-wide policies and practices.

## B.

In November 2016, the named plaintiffs sought class certification for a class of all children who are or will be in DCS's custody, along with a subclass of children who, while in DCS's custody, were not placed in the care of an adult

---

[1] The plaintiffs later voluntarily dismissed their family integrity claim.

[2] The record is admittedly vague on this point, but any vagary is immaterial because it does not affect our disposition. On remand, the district court remains free to certify, decertify, or amend classes, and the parties may resolve which plaintiffs remain adequate class members in that forum. *See* Fed. R. Civ. P. 23(c)(1)(C).

relative or person with a significant relationship with the child, and a subclass of children eligible for Medicaid. The named plaintiffs supported their motion for class certification with their complaint; raw data generated by DCS to show how DCS was failing to deliver timely health care to foster children; expert reports by Steven Blatt, MD, Marci White, MSW, and Arlene Happach, a psychologist, who declared that Arizona's foster care system put children in grave risk of harm by failing to provide adequate care; and independent investigative reports, deposition testimony, and DCS/AHCCCS policy and educational materials. B.K. also supported her claim as class representative with excerpts from her DCS file that, if interpreted and credited as the plaintiffs contended, could tend to show she has been kept in inappropriate home settings and has serious unmet mental and physical healthcare needs.

B.K. asserted two due process claims on behalf of the general class, one due process claim on behalf of the non-kinship subclass, and one Medicaid Act claim on behalf of the Medicaid subclass. The district court analyzed the class certification motion through the lens of these claims. In September 2017, the district court certified the following classes:

> General Class:     All children who are or will be in the legal custody of DCS due to a report or suspicion of abuse or neglect.
>
> Non-Kinship
> Subclass:     All members in the General Class who are not placed in the care of an adult relative or person

who has a significant relationship with the child.

Medicaid Subclass:          All members of the General Class who are entitled to early and periodic screening, diagnostic, and treatment services under the federal Medicaid statute.

The district court reasoned that the due process claims could be litigated class-wide as to the General Class and Non-Kinship Subclass by answering whether the alleged state-wide policies and practices were unconstitutional, following our reasoning in *Parsons v. Ryan*, 754 F.3d 657 (9th Cir. 2014). The district court explained that:

> Even if health issues may differ, every child in the [DCS] custody is necessarily subject to the same medical, mental health, and dental care policies and practices of the [DCS] in the same way that the inmates in *Parsons* were subjected to the policies and practices of the ADC [Arizona Department of Corrections]. Any one child could easily fall ill, be injured, need treatment, require a diagnostic, need emergency care, crack a tooth, or require mental health treatment. And any child in the foster care system would be subjected to the [DCS] policies regarding placement decisions. Thus, every single child in the foster care system faces a substantial risk of

serious harm if [DCS] policies and practices fail to adhere to constitutional requirements.

The district court followed similar reasoning to certify the Medicaid Subclass, explaining that:

Similar to the constitutional claims, central to the claim here is the question of whether practices by [DCS] and AHCCCS failed to adhere to the Medicaid statute. Even if a child's specific medical diagnosis may differ, however, whether the foster care system's practices establish a pattern of non-compliance arise from statewide policies and practices by [DCS] and AHCCCS.

The district court also held that class certification comported with Federal Rule of Civil Procedure 23(a)(1), (3)–(4) and 23(b)(2).

The Directors timely sought interlocutory review of the district court's class certification order, and we stayed proceedings in the district court pending our review. The only issue on appeal is whether the three classes were properly certified, including whether the named plaintiffs and class members have standing to bring their claims.

## II.

We review a district court's class certification decision for abuse of discretion. An error of law is a per se abuse of discretion. Accordingly, we first review a class certification determination for legal error under a de novo standard, and if no legal error occurred, we will proceed to review the

decision for abuse of discretion. A district court applying the correct legal standard abuses its discretion only if it (1) relies on an improper factor, (2) omits a substantial factor, or (3) commits a clear error of judgment in weighing the correct mix of factors. Additionally, we review the district court's findings of fact under the clearly erroneous standard, meaning we will reverse them only if they are (1) illogical, (2) implausible, or (3) without support in inferences that may be drawn from the record.

*Sali v. Corona Reg'l Med. Ctr.*, 909 F.3d 996, 1002 (9th Cir. 2018) (internal quotation marks, alterations, and citations omitted).

"We review the district court's factual findings [as to standing] under the clearly erroneous standard and review the district court's determination of standing *de novo*." *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 978 (9th Cir. 2011).

## III.

Class actions are governed by Federal Rule of Civil Procedure 23. Rule 23(b)(2) provides that "[a] class action may be maintained if Rule 23(a) is satisfied and if . . . the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Rule 23(a) in turn provides that "members of a class may sue or be sued as representative parties on behalf of all members only if" four class prerequisites are met. These four prerequisites are

commonly known as (1) numerosity, (2) commonality, (3) typicality, and (4) adequacy of representation. *Gen. Tel. Co. of the Nw., Inc. v. EEOC*, 446 U.S. 318, 330 (1980).

The Directors argue that all three classes in this action should not have been certified by the district court. We examine each class in turn.

## A.

The district court certified a General Class consisting of "[a]ll children who are or will be in the legal custody of DCS due to a report or suspicion of abuse or neglect." This class alleges that Director McKay has violated the class's right to substantive due process under the Fourteenth Amendment by failing to care adequately for the children in the class. The Directors argue that this class should have failed because the class members lack standing to press their due process claim, the class lacks commonality, the representative plaintiffs' claims and defenses are not typical of the class, and uniform injunctive relief under Rule 23(b)(2) is unavailable.

## 1.

We begin our analysis with standing. Standing is a "threshold issue" and an "essential and unchanging part of the case-or-controversy requirement of Article III." *Horne v. Flores*, 557 U.S. 433, 445 (2009) (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992)). "To establish standing, a plaintiff must present an injury that is concrete, particularized, and actual or imminent; fairly traceable to the defendant's challenged action; and redressable by a favorable ruling." *Id.* (citing *Lujan*, 504 U.S. at 560–61). The Directors argue that absent class members lack standing because some class members are adequately receiving care, and thus do not have a concrete due process injury. However,

the Directors misunderstand both the nature of the plaintiffs' due process claims and the nature of an Article III standing inquiry in the context of class certification.

Of course, the Directors are correct that class representatives must have Article III standing, as the irreducible constitutional minimum of a case or controversy. *See In re Zappos.com, Inc.*, 888 F.3d 1020, 1024 (9th Cir. 2018). It was the named plaintiffs' burden — as it would be any other plaintiff's — to support each standing element "in the same way as any other matter on which the plaintiff bears the burden of proof, *i.e.*, with the manner and degree of evidence required at the successive stages of litigation." *Lujan*, 504 U.S. at 561. "[T]he manner and degree of evidence required at the preliminary class certification stage is not the same as at the successive stages of the litigation — *i.e.*, at trial." *Sali*, 909 F.3d at 1006 (internal quotation marks omitted). But the Directors then confuse the standing analysis in a class action for the class certification analysis. As we have previously explained, "once the named plaintiff demonstrates her individual standing to bring a claim, the standing inquiry is concluded, and the court proceeds to consider whether the Rule 23(a) prerequisites for class certification have been met." *Melendres v. Arpaio*, 784 F.3d 1254, 1262 (9th Cir. 2015) (quoting 1 William B. Rubenstein, Newberg on Class Actions § 2:6 (5th ed. 2011)). "[A]ny issues regarding the relationship between the class representative and the passive class members — such as dissimilarity in injuries suffered — are relevant only to class certification, not to standing." *Id.* (quoting Newberg on Class Actions § 2:6). This does not mean that Article III considerations are irrelevant to Rule 23, for we are always "mindful that the Rule's requirements must be interpreted in keeping with Article III constraints." *Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 831 (1999) (alterations omitted)

(quoting *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 612–13 (1997)). But it does mean that when we measure a plaintiff's standing, regardless of whether the plaintiff sues individually or as class representative, we look concretely at the facts that pertain to that plaintiff. Thus, the relevant inquiry here is whether B.K. has standing to bring the two due process claims asserted on behalf of the General Class.

In this case, B.K. has standing to press her due process claims, and that concludes the standing inquiry. B.K. has serious medical diagnoses that require prompt and adequate medical care from her custodian, which is the State of Arizona. She has presented evidence that she has not received adequate medical care or appropriate placements in the past as well as evidence that statewide policies and practices expose her to a risk of similar future harms. If state officials failed and continue to fail to provide her "reasonable safety and minimally adequate care and treatment appropriate to [her] age and circumstances" through the deficient statewide policies and practices she alleges, the harm to her will have been caused by those officials. *See Lipscomb v. Simmons*, 962 F.2d 1374, 1379 (9th Cir. 1992). If those allegedly deficient policies and practices are abated by an injunction, that harm may be redressed by a favorable court decision. B.K. therefore has standing to press the due process claims she brings on behalf of the General Class.

## 2.

We next turn to whether B.K. may represent the General Class consistent with Rule 23. We begin our analysis with commonality.

Rule 23(a)(2) provides that class members may sue as representative parties only if "there are questions of law or

fact common to the class." "That language is easy to misread, since any competently crafted class complaint literally raises common questions." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 349 (2011) (alteration and internal quotation marks omitted) (quoting Richard Nagareda, *Class Certification in the Age of Aggregate Proof*, 84 N.Y.U. L. Rev. 97, 131–32 (2009)). Merely alleging a "violation of the same provision of law" does not satisfy commonality. *Id.* at 350. Instead, the plaintiffs' claims must "'depend upon a common contention' such that 'determination of their truth or falsity will resolve an issue that is central to the validity of each of the claims in one stroke.'" *Parsons*, 754 F.3d at 675 (alteration omitted) (quoting *Wal-Mart*, 564 U.S. at 350). "What matters to class certification is not the raising of common questions — even in droves — but, rather the capacity of a classwide proceeding to generate common answers apt to drive the resolution of the litigation." *Id.* (internal quotation marks, alterations, and emphasis omitted) (quoting *Wal-Mart*, 564 U.S. at 350). "[W]here the circumstances of each particular class member vary but retain a common core of factual or legal issues with the rest of the class, commonality exists." *Id.* (quoting *Evon v. Law Offices of Sidney Mickell*, 688 F.3d 1015, 1029 (9th Cir. 2012)).

"[I]n all class actions, commonality cannot be determined without a precise understanding of the nature of the underlying claims." *Id.* at 676. "[T]o assess whether the putative class members share a common question, the answer to which will resolve an issue that is central to the validity of each one of the class member's claims, we must identify the elements of the class member's case-in-chief." *Id.* (internal quotation marks and alterations omitted) (quoting *Stockwell v. City and Cty. of San Francisco*, 749 F.3d 1107, 1114 (9th Cir. 2014)).

Here, B.K. seeks to press two due process claims on behalf of the General Class. Due process requires the state to provide children in its care "reasonable safety and minimally adequate care and treatment appropriate to the age and circumstances of the child." *Lipscomb*, 962 F.2d at 1379. To prevail on a claim for failure to meet this duty, a plaintiff must prove that state officials acted with such deliberate indifference to the plaintiffs' liberty interest that their actions "shock the conscience." *Tamas v. Dep't of Soc. & Health Servs.*, 630 F.3d 833, 844 (9th Cir. 2010) (quoting *Brittain v. Hansen*, 451 F.3d 982, 991 (9th Cir. 2006)). This standard requires proof of two facts: (1) an objectively substantial risk of harm, and (2) the official's subjective awareness of that risk. *Id.* at 845. The second part may be proven by showing (1) that the official was aware of facts from which an inference of risk may be drawn and that the official made that inference, (2) that the official was aware of facts from which an inference of risk may be drawn and that any reasonable official would have been compelled to draw that inference, or (3) that the risk of harm is obvious. *Id.*

Based on the nature of the plaintiffs' due process claims and the scope of the class certified, the district court here did not abuse its discretion by determining that commonality exists. We have previously recognized in the Eighth Amendment context that a state's policies and practices can expose *all* persons within its custody to a substantial risk of harm, which is the legal standard required by this due process claim. In *Parsons v. Ryan*, we held that a class of "all prisoners who are now, or will in the future be, subjected to the medical, mental health, and dental care policies and practices of the ADC [Arizona Department of Corrections]" had sufficient commonality because "[t]he putative class . . . members thus all set forth numerous common contentions whose truth or falsity can be determined in one stroke:

whether the specified statewide policies and practices to which they are all subjected by ADC expose them to a substantial risk of harm." 754 F.3d at 678. We explicitly rejected the reasoning pressed on us by the Directors here: that "plaintiffs' claims a[re] ultimately little more than a conglomeration of many such individual claims, rather than . . . a claim that central policies expose all inmates to a risk of harm." *Id.* at 675 n.17. Thus, it did not matter whether each individual prisoner had already been harmed by falling sick and receiving inadequate care, but whether every prisoner, solely by virtue of being in Arizona's prisons, was at *substantial risk* of future harm. *Id.* at 678. Because every prisoner in the class was exposed, "as a result of specified statewide ADC policies and practices that govern the overall conditions of health care services and confinement, to a substantial risk of serious future harm to which the defendants are allegedly deliberately indifferent . . . every inmate suffer[ed] exactly the same constitutional injury." *Id.* The "policies and practices [we]re the 'glue' that h[eld] together the putative class," because "either each of the policies and practices is unlawful as to every inmate or it is not." *Id.*[3]

The same reasoning applies here. The district court properly grounded its commonality determination in the constitutionality of statewide policies and practices, which is a "common question of law or fact" that can be litigated in

---

[3] Some of the policies and practices alleged in *Parsons* included: "creation of lengthy and dangerous delays in receiving care and outright denials of health care; . . . a practice of employing insufficient health care staff; . . . failure to provide prisoners with care for chronic diseases and protection from infectious diseases; . . . denial of medically necessary mental health treatment . . . and . . . denial of basic mental health care to suicidal and self-harming prisoners." *Parsons*, 754 F.3d at 664 (internal quotation marks and alterations omitted).

"one stroke." *See Wal-Mart*, 564 U.S. at 350. Specifically, the district court identified the following "statewide practices affecting the proposed General Class": (1) failure to provide timely access to health care, including comprehensive evaluations, timely annual visits, semi-annual preventative dental health care, adequate health assessments, and immunizations; (2) failure to coordinate physical and dental care service delivery; (3) ineffective coordination and monitoring of DCS physical and dental services; (4) overuse of congregate care for children with unmet mental needs; (5) excessive caseworker caseloads; (6) failure to investigate reports of abuse timely; (7) failure to document "safety assessments"; (8) failure to close investigations timely; and (9) investigation delays. Regardless whether any of these policies are ultimately found unconstitutional such that the plaintiffs prevail on the merits, their constitutionally can properly be litigated in a class setting. Thus, as in *Parsons*, the statewide policies and practices are the "glue" that holds the class together. *See* 754 F.3d at 678.

The Directors do not seriously dispute the adequacy of the General Class in this regard. At oral argument, counsel for the Directors conceded that they were not challenging the district court's application of *Parsons*, but the validity of *Parsons* itself. That argument is beyond the scope of this panel's authority and we will not address it. *See Miller v. Gammie*, 335 F.3d 889, 899–900 (9th Cir. 2003) (en banc) (holding that circuit precedent may be overturned only en banc, with exceptions that do not apply here). We therefore conclude that the district court did not abuse its discretion by concluding that commonality existed.

3.

We next address typicality. Rule 23(a)(3) provides that class members may sue as representative parties only if "the claims or defenses of the representative parties are typical of the claims or defenses of the class." The named plaintiff's representative claims are "typical" if they are "reasonably coextensive with those of absent class members; they need not be substantially identical." *Parsons*, 754 F.3d at 685 (quoting *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998)). "The test of typicality is 'whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct.'" *Id.* (quoting *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992)).

In *Parsons*, we concluded that the district court did not abuse its discretion in similar circumstances. There, we reasoned that (1) "the named plaintiffs are all inmates in ADC custody" and (2) "[e]ach declares that he or she is being exposed, like all other members of the putative class, to a substantial risk of serious harm by the challenged ADC policies and practices." *Id.* Based on those facts, we concluded that

> The named plaintiffs thus allege "the same or a similar injury" as the rest of the putative class; they allege that this injury is a result of a course of conduct that is not unique to any of them; and they allege that the injury follows from the course of conduct at the center of the class claims.

*Id.* (alteration omitted) (quoting *Hanon*, 976 F.2d at 508).

Once more, the same reasoning applies here. B.K. is a child in Arizona's custody. The members of the General Class are children who are or will be in Arizona's custody. B.K. has demonstrated, not merely through allegations but through raw data, expert reports, deposition testimony, and DCS materials, that she is subject to statewide policies and practices that apply equally to every member of the class. By defining her claim based on the risk of harm caused by these policies — a cognizable constitutional injury under our precedent — B.K. has demonstrated that class members have similar injuries, based on conduct that is not unique to her, and caused by the same injurious course of conduct. *See id.*

The Directors counter that B.K., and in fact any class representative, remains atypical because the class is internally in conflict. Citing typicality's purpose of "assur[ing] that the interest of the named representative aligns with the interests of the class," *Stearns v. Ticketmaster Corp.*, 655 F.3d 1013, 1019 (9th Cir. 2011) (quoting *Wolin v. Jaguar Land Rover N. Am.*, 617 F.3d 1168, 1175 (9th Cir. 2010)), the Directors argue that class representatives will seek to prioritize their own desired reforms to Arizona's foster care system at the expense of other possibilities. This is not necessarily true, *cf. Peralta v. Dillard*, 744 F.3d 1076, 1083 (9th Cir. 2014) (en banc) ("Lack of resources is not a defense to a claim for prospective relief because prison officials may be compelled to expand the pool of existing resources in order to remedy continuing Eighth Amendment violations"), but — even were we to agree with the Directors' argument in principal — it would not be enough for us to deem the district court's contrary decision a legal error or "a clear error of judgment." *See Sali*, 909 F.3d at 1002. B.K.'s claim is reasonably coextensive with absent class members' claims, and that is sufficient.

The district court did not abuse its discretion by determining that the named plaintiffs were typical of the class.

4.

Finally, we address uniform injunctive relief. Civil Rule 23(b)(2) provides that "[a] class action may be maintained if . . . the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." "The key to the (b)(2) class is the 'indivisible nature of the injunctive or declaratory remedy warranted — the notion that the conduct is such that it can be enjoined or declared unlawful only as to all of the class members or as to none of them.'" *Wal-Mart*, 564 U.S. at 360 (quoting Nagareda, 84 N.Y.U. L. Rev. at 132). "In other words, Rule 23(b)(2) applies only when a single injunction or declaratory judgment would provide relief to each member of the class. It does not authorize class certification when each individual class member would be entitled to a different injunction." *Id.* (emphasis in original omitted).

In *Parsons*, we concluded that the district court did not abuse its discretion by certifying a Rule 23(b)(2) class when the plaintiffs requested the defendants be ordered "to develop and implement, as soon as practical, a plan to eliminate the substantial risk of serious harm that prisoner Plaintiffs and members of the Plaintiff Class suffer due to Defendants' inadequate medical, mental health, and dental care." 754 F.3d at 687. Rejecting the defendants' argument that every individual inmate required an individual injunction, we explained that Rule 23(b)(2)'s requirements are "unquestionably satisfied when members of a putative class seek uniform injunctive or declaratory relief from

policies or practices that are generally applicable to the class as a whole." *Id.* at 688. Thus, because "all members of the putative class and subclass [we]re allegedly exposed to a substantial risk of serious harm by a specified set of centralized ADC policies and practices of uniform and statewide application," the defendants had "acted or refused to act on grounds that apply generally to the class." *Id.* (quoting Fed. R. Civ. P. 23(b)(2)).

Once more, the same reasoning applies here. The plaintiffs have not brought a concatenation of individual claims that must be redressed through individual injunctions; they have brought unified claims that "a specified set of centralized [DCS] policies and practices of uniform and statewide application" have placed them at a substantial risk of harm. *See id.* A single, indivisible injunction ordering state officials to abate those policies and practices "would provide relief to each member of the class," thus satisfying Rule 23(b)(2). *See Wal-Mart*, 564 U.S. at 360.

The Directors' arguments to the contrary do not convince us. The Directors first argue that no injunction could apply to all plaintiffs in the general class because different foster children face different potential harms, thus having different competing interests, and thus needing different injunctive relief. But this argument improperly assumes that abating the plaintiffs' specified policies and practices will be an either-or situation where only some (or zero) class members receive their desired relief. That is incorrect, for two reasons. First, class certification is not a decision on the merits, and the plaintiffs will only be entitled to injunctive relief if such relief is necessary to redress the constitutional violations they actually prove at trial. Second, even if abating two or more unconstitutional policies is impossible with limited funds, state officials "may be compelled to expand the pool

of existing resources in order to remedy continuing [constitutional] violations." *Peralta*, 744 F.3d at 1083. For instance, the district court could enjoin DCS to hire more caseworkers in order to meet health care delivery deadlines in a manner that ensures the plaintiffs receive timely medical evaluations and care. *Cf. Parsons*, 754 F.3d at 689 ("For example, every inmate in ADC custody is allegedly placed at risk of harm by ADC's policy and practice of failing to employ enough doctors — an injury that can be remedied on a class-wide basis by an injunction that requires ADC to hire more doctors"). Thus, any future lack of resources or other federalism concerns invoked by the prospect of injunctive relief go only to the ultimate scope of the injunction. They do not per se forbid the district court from certifying a Rule 23(b)(2) class.

The Directors next argue that the district court erred because the plaintiffs failed to provide a specific injunction that could satisfy Rule 23(b)(2) and Rule 65(d). This argument has no basis in existing law, whether in the text of the Federal Rules or in our precedent. Plaintiffs do not need to specify the precise injunctive relief they will ultimately seek at the class certification stage. Instead, as we have explained before, Rule 23(b)(2)

> ordinarily will be satisfied when plaintiffs have described the general contours of an injunction that would provide relief to the whole class, that is more specific than a bare injunction to follow the law, and that can be given greater substance and specificity at an appropriate stage in the litigation through fact-finding, negotiations, and expert testimony.

*Parsons*, 754 F.3d at 689 n.35. In this case, the "general contours of an injunction" are enjoining DCS to abate the nine policies identified by the district court as amenable to class-wide litigation. That was enough. A more specific injunction will depend on further fact-finding and what claims the plaintiffs actually prove through further litigation.

In sum, the district court did not err or abuse its discretion in its rulings on standing, commonality, typicality, and uniform injunctive relief. We affirm the district court's certification of the General Class.

### B.

We next consider the Non-Kinship Subclass. The district court certified a class of "[a]ll members in the General Class who are not placed in the care of an adult relative or person who has a significant relationship with the child." As with the General Class, the plaintiffs' legal theory was that this subclass was denied due process of law under the Fourteenth Amendment when Director McKay's statewide practices and policies placed them at substantial risk of harm.

We begin our Non-Kinship Subclass inquiry with standing. Once more, the relevant question is whether B.K. has standing to challenge the allegedly unconstitutional policies and practices affecting the subclass. *See Melendres*, 784 F.3d at 1262. Once more, we conclude that B.K. has standing to bring this subclass's due process claim. B.K. has alleged and presented evidence that she has been separated from her siblings, prevented from seeing her mother, placed in an inappropriate group home, and placed in temporary housing for long periods of time. B.K. has also presented evidence, as we have previously discussed, that she has serious behavioral and medical concerns requiring attention from her custodian. B.K. has thus alleged and provided

evidence that, as a child in DCS custody, she faces a risk of harm from DCS policies and practices that inadequately provide for children who do not have available kinship placements. Consistent with "the manner and degree of evidence required at th[is] . . . stage[] of litigation" to prove standing, *Lujan*, 504 U.S. at 561, these allegations and evidence describe imminent, concrete injuries — fairly traceable to the alleged state-wide practices and redressable by abatement of those practices. The district court did not err by concluding that B.K. has standing.

There is little else to add about this subclass that we have not already said about the General Class. The Directors' brief does not suggest a reason why the Non-Kinship Subclass would fail if the General Class succeeds, and we "will not manufacture arguments for an appellant." *Greenwood v. FAA*, 28 F.3d 971, 977 (9th Cir. 1994). We therefore confine our review to whether, under the same challenges articulated in our foregoing discussion of the General Class, the district court abused its discretion by certifying the Non-Kinship Subclass.

We conclude that the district court did not abuse its discretion. The district court identified the following statewide practices affecting the Non-Kinship Subclass: (1) excessive use of emergency shelters and group homes; (2) unnecessary separation of siblings; and (3) placement of children far from home. As with the General Class, commonality, typicality, and uniformity of injunctive relief were satisfied by identifying these practices because the district court will be able to determine whether the Directors have an unconstitutional practice of placing children in substantial risk of harm by evaluating these practices as a whole, rather than as to each individual class member. For instance, if the plaintiffs prove that state officials have a

practice of placing children in emergency shelters for months, and that such a practice is unconstitutional, it might declare that practice unconstitutional. The district court might then enjoin the Directors to take concrete steps to meet specific placement deadlines, such as by expanding the number of foster homes. *Cf. Parsons*, 754 F.3d at 689 ("For example, every inmate in ADC custody is allegedly placed at risk of harm by ADC's policy and practice of failing to employ enough doctors — an injury that can be remedied on a class-wide basis by an injunction that requires ADC to hire more doctors"). That demonstrates the requisite commonality, typicality, and uniformity of injunctive relief. It does not matter whether, at this "tentative, preliminary, and limited" phase, *see Sali*, 909 F.3d at 1004 (internal quotation marks and citations omitted), proving the unconstitutionality of these practices will be difficult or not. It also does not matter whether crafting appropriate injunctive relief will be difficult or not. Those merits questions, while not irrelevant to the class certification inquiry, do not preclude certification as a matter of law unless proving the answer to a common question or crafting uniform injunctive relief will be impossible. Otherwise, we commit class certification decisions to the district court's discretion, and we hold there is no "clear error of judgment" here that shows an abuse of that discretion. *See id.* at 1002.

We therefore affirm the district court's certification of the Non-Kinship Subclass.

## C.

We last consider the Medicaid Subclass. The district court certified a class of "[a]ll members of the General Class who are entitled to early and periodic screening, diagnostic, and treatment services under the federal Medicaid statute." The Directors argue that this subclass lacks commonality,

typicality, uniformity of injunctive relief, and that the class lacks standing. The Directors also argue that the plaintiffs have failed to prove sufficiently the factual bases for those requirements.

1.

Once again, we begin our analysis with standing. The relevant question is whether B.K. has suffered, or will imminently suffer, a concrete injury, caused by the Directors' failure to timely provide her with EPSDT services, and redressable by a favorable court decision. *See Melendres*, 784 F.3d at 1262. These elements must be supported by "the manner and degree of evidence required at th[is] successive stage[] of the litigation," *Lujan*, 504 U.S. at 561, *i.e.*, tentative class certification. At this "tentative, preliminary, and limited" stage we have held strictly admissible evidence is not required, *see Sali*, 909 F.3d at 1004 (internal quotation marks and citations omitted), and we have indicated that plaintiffs can meet their evidentiary burden in part through allegations when the allegations are detailed and supported by additional materials, *see Parsons*, 754 F.3d at 683 (concluding that plaintiffs met evidentiary burden through "four thorough and unrebutted expert reports, the detailed allegations in the 74-page complaint, hundreds of internal ADC documents, and declarations by the named plaintiffs").

Here, B.K. alleges that she has been "deprived of needed physical and mental health care," including by failures to ensure that she obtained glasses, to ensure she received orthopedic shoes, to have her seen by a dentist, to provide her with psychological evaluations, and to provide her with counseling. She also alleges that the Directors have "a practice of failing to provide members of the Medicaid Subclass with the screening, diagnostic and treatment

services required under the EPSDT provisions of the Medicaid Act." These allegations, if true, would demonstrate a concrete injury caused by the failure to receive EPSDT services timely as well as "a sufficient likelihood that [s]he will again be wronged in a similar way," which would be redressable by an injunction ordering the Directors to abate the policies and/or practices that caused the delivery failure. *See Haro v. Sebelius*, 747 F.3d 1099, 1108 (9th Cir. 2014) (quotation marks and citation omitted); *see also Armstrong v. Davis*, 275 F.3d 849, 861 (9th Cir. 2001) (abrogated on other grounds by *Johnson v. California*, 543 U.S. 499 (2005)) (explaining that for purposes of standing to seek injunctive relief, "the plaintiff may demonstrate that the harm is part of a pattern of officially sanctioned behavior, violative of the plaintiffs' federal rights," and that "where the defendants have repeatedly engaged in the injurious acts in the past, there is a sufficient possibility that they will engage in them in the near future" (alterations and quotation marks omitted)). However, at this stage of the litigation allegations alone are insufficient to meet B.K.'s burden. We therefore examine whether she has submitted sufficient evidence to support her standing to bring this claim.

The confidential medical and placement evidence in the record is thin, but we conclude that it is sufficient to corroborate the allegations at this stage. B.K.'s allegations are supported by materials suggesting that she has in fact been denied the services she alleges she is entitled to but has not received. B.K. has also submitted evidence suggesting that these practices have continued over time and may occur again. B.K. therefore has standing to bring her Medicaid claim. To the extent the Directors are correct that these facts are wrong, that issue may be considered by the district court on remand. On appeal, however, the materials in the record adequately support B.K.'s standing. We therefore proceed to

considering whether the Medicaid Subclass was properly certified with B.K. as class representative.

2.

We begin our class certification analysis with commonality. The Medicaid Subclass poses different questions from the General Class and Non-Kinship Subclass in this regard. Unlike the due process claims, which were clearly alleged on a substantial risk of harm theory, the foundation of the plaintiffs' legal theory for the Medicaid claim was somewhat opaque at class certification, and it remains opaque on appeal. In addition, while the ultimate *success* of any Medicaid theory is irrelevant at this stage, merits questions nonetheless matter at class certification to the extent necessary to assess whether Rule 23 has been satisfied. *See Wal-Mart*, 564 U.S. at 351. We therefore cannot affirm the Medicaid Subclass certification without first carefully examining the nature of the plaintiffs' claim under the Medicaid Act.

As we explained in our recitation of the facts, Medicaid is "a cooperative federal-state program through which the federal government provides financial assistance to states so that they can furnish medical care to low-income individuals." *Cal. Ass'n of Rural Health Clinics*, 738 F.3d at 1010. States operate Medicaid plans that must conform with the federal Medicaid statutes and regulations, and in certain instances beneficiaries can enforce those federal requirements through a private action. *Id.* at 1010, 1013. One of these federal requirements is that state plans must provide medical assistance to children within their care. 42 U.S.C. § 1396a(a)(10)(A)(i)(I). This medical assistance includes EPSDT services, *id.* § 1396d(a)(4)(B), which are defined to include regular screenings, vision services, dental services, hearing services, and "[s]uch other necessary health care,

diagnostic services, treatment, and other measures described in subsection (a) of [section 1396d] to correct or ameliorate defects and physical and mental illnesses and conditions discovered by the screening services," *id.* § 1396d(r). States must ensure that EPSDT services provided are "reasonably effective," and, while they may delegate provision of such services to other organizations, "the ultimate responsibility to ensure treatment remains with the state." *Katie A., ex rel. Ludin v. Los Angeles Cty.*, 481 F.3d 1150, 1159 (9th Cir. 2007). States must also ensure that children receive EPSDT services "promptly" and "without any delay caused by the agency's administrative procedures." 42 C.F.R. § 435.930(a).

In their complaint, the plaintiffs alleged that the Directors violated the Medicaid Act by failing to provide EPSDT services timely. Although alleged as one claim, there are two possible legal theories that could support it. First, the plaintiffs might demonstrate that the Directors failed to provide statutorily mandated EPSDT services. *See Katie A.*, 481 F.3d at 1159. Second, the plaintiffs might demonstrate that, even if all required services were eventually provided, the Directors failed to provide the services with reasonable promptness. *See* 42 C.F.R. § 435.930(a); *see also Kessler v. Blum*, 591 F. Supp. 1013, 1032–33 (S.D.N.Y. 1984) (certifying class based on unreasonably long delays in providing services to all New York State residents). The plaintiffs here alleged both that the Directors had a practice of failing to provide EPSDT services and a practice of failing to provide EPSDT services with reasonable promptness, and the district court reasoned that commonality existed because it could adjudicate whether Arizona's "foster care system's practices establish a pattern of non-compliance."

We hold that the district court abused its discretion by certifying the Medicaid Subclass based on an apparent misconception of the legal framework for such a claim. Throughout this litigation, the plaintiffs' class certification argument has rested on a misunderstanding of the Medicaid Act. In the Eighth Amendment context, and in the due process context relevant to the General Class and Non-Kinship Subclass, proving a substantial risk of harm is all that is necessary to prove the claim. *See Parsons*, 784 F.3d at 677 ("[A] prison official's deliberate indifference to a substantial risk of serious harm to an inmate violates the Eighth Amendment" (quotation marks and citation omitted)). The same is not true of a claim under the Medicaid Act, which must be based on acts or omissions by the state that actually violate the requirements imposed by the Medicaid Act. Yet the plaintiffs have both here and in the district court premised their arguments on the reasoning that proving risk alone establishes an EPSDT claim. Nothing in the text of the Medicaid Act or its accompanying regulations supports this approach because neither suggests that being at risk of not receiving Medicaid services is itself a Medicaid violation. The most natural reading of the Act and our precedents is that a violation occurs when EPSDT services have failed to be provided in a timely manner. *See Katie A.*, 481 F.3d at 1157 ("In general, the EPSDT provisions require only that the individual services listed in § 1396d(a) be provided"); 42 C.F.R. § 435.930(a). The plaintiffs have thus conflated the commonality analysis for their due process claims with the commonality analysis for their Medicaid claims by erroneously importing the "substantial risk of harm" standard from *Parsons* without considering the distinct nature of the Medicaid Act.

The district court's analysis on this point appears to have followed the same reasoning as was offered by the plaintiffs.

The district court did discuss commonality in this case by referring to common questions that were tethered to the Medicaid Act in particular. But the court identified those common questions as "whether [DCS and AHCCCS's] practices . . . failed to provide timely and adequate access to . . . services; [] failed to coordinate care to ensure timely medically necessary . . . treatment . . . ; and [] failed to build and maintain an adequate capacity and infrastructure of mental health providers and therapeutic placements." Without further findings on the policies or practices that caused these failures, it is unclear whether the Medicaid claim can be litigated class-wide, because it is not clear whether these failures caused the same deprivations of services or risks of such deprivations across the whole subclass, or whether some categories of children were deprived services while others were not.[4] The district court's class certification order thus rests on a legal error, which always constitutes an abuse of discretion. *See Sali*, 909 F.3d at 1002.

The plaintiffs nonetheless contend that class certification should be upheld because a similar, but distinct, risk theory supports the class. Specifically, the plaintiffs argue that, because a plaintiff can have standing to challenge a statutory violation before the violation has occurred, *see Cent. Delta Water Agency v. United States*, 306 F.3d 938, 949 (9th Cir. 2002), the class may be certified based on a common

---

[4] Relatedly, it is not clear that the district court specifically considered whether B.K. is typical of those in the Medicaid Subclass, and thus whether Rule 23's typicality requirement is satisfied with respect to the Medicaid claim. The court concluded only that "every child in the foster care system under state custody is highly likely to require medical care" without addressing whether every other child had, like B.K., been denied adequate medical care or was subject to an imminent risk of a statutory violation.

"significant risk" of an imminent Medicaid violation to all class members, *see id.* (identifying "significant risk" as the correct standard when a plaintiff challenges a future statutory violation). Under this theory, the plaintiffs argue, it does not matter whether risk proves a completed Medicaid violation because they can obtain injunctive relief based on risk alone.

As a conceptual matter, we agree with the plaintiffs that Rule 23's commonality requirement can be satisfied in a statutory case by a common risk of a future violation that flows from the same state-wide policy or practice. As explained above, the relevant question for commonality is whether every child in the Medicaid Subclass is subjected to the same state-wide policy or practice that violates the Medicaid Act.[5] There are two ways that this could occur. First, the policy or practice could be facially invalid, such as by directly contravening the Medicaid Act. This theory has not been presented as the basis for commonality in this case. Second, the policy or practice could expose every child in the subclass to a significant risk of an imminent future Medicaid violation. Under this theory, the plaintiffs are correct that they may challenge the Medicaid violation before it has taken place, so long as the requisite "significant risk" exists, so commonality may exist based on a finding that all class members are subjected to the same risk. *See id*.

The plaintiffs' argument nonetheless fails, however, because the district court did not make factual findings or

---

[5] By this we do not hold, and our opinion should not be read to imply, that the plaintiffs must show that they will prevail on their claim of a Medicaid violation at the class certification stage. Rather, they must show only that, if they do prevail on the merits, they will be able to prevail class-wide.

exercise its discretion based on this understanding of commonality when it certified the Medicaid Subclass. Nowhere in its order is there a factual finding that every subclass member was subject to an identical "significant risk" of a future Medicaid violation that would support injunctive relief. True, we could perhaps infer that such a finding was made because the district court exercised its discretion to certify the class after correctly explaining that "central to the claim here is the question of whether practices by [DCS] and AHCCCS failed to adhere to the Medicaid statute." But we are skeptical we should do so in light of the legal error we have identified, which appears intertwined with the district court's decision to certify this subclass. Moreover, as an appellate body we cannot presume that the district court would have made this finding or exercised its discretion to certify the class had it considered this legal theory for commonality, and we will not supplant its discretion by making that determination for ourselves. We therefore vacate the Medicaid Subclass and remand for further proceedings. **[6]** We emphasize that, while we have

---

**[6]** The partial dissent argues that vacatur is not warranted because "errors of law that do not affect the district court's discretionary decision can be disregarded." The partial dissent thus argues that we should uphold the Medicaid Subclass on the alternative risk theory presented by the plaintiffs. But, as we have explained, doing so would substitute the district court's role in certifying the class with our role in reviewing certification on appeal. The record does not permit us to infer what the district court must have found as to the Medicaid Subclass by extrapolation from the General Class.

The partial dissent suggests that we can make such an inference because "B.K. challenges the exact same state-wide policies that create the exact same risk of not receiving the exact same medical services," and states that the "only difference" between the class claims is that "to obtain an injunction under the Medicaid statute, B.K. does not have to prove deliberate indifference, as she must to obtain an injunction under

vacated class certification based on the nature of the litigation to date, nothing in our opinion should prevent the district court from making new factual findings and exercising its discretion to recertify the Medicaid Subclass on remand, if it determines that such action would be appropriate.

All parties shall bear their own costs on appeal.

**AFFIRMED in part, VACATED in part, and REMANDED.**

---

the Due Process Clause." The plaintiffs' counsel did make that representation about the class claims at oral argument. However, the record belies counsel's assertion. B.K.'s claim on behalf of the General Class challenged those harms cognizable under the due process clause for medical deficiencies and the failure to conduct timely investigations into reports of abuse or neglect, while B.K.'s claim on behalf of the Medicaid Subclass challenged those harms cognizable under the Medicaid Act for EPSDT deficiencies. From these divergent claimed harms, the district court identified divergent common questions: the common questions binding the General Class were the constitutionality of the Directors' failure to provide physical and dental care, failure to provide mental and behavioral health care, and failure to conduct investigations timely, while the common questions binding the Medicaid Subclass were the legality of the Directors' failure to provide timely and adequate access to EPSDT services, failure to coordinate care to ensure timely EPSDT services, and failure to build and maintain an adequate capacity of mental health providers and therapeutic placements. The class claims are thus not the same, and they cannot be treated the same for purposes of class certification. Only a separate class certification analysis, recognizing the difference between the due process claims and the Medicaid claim as we have explained in this opinion, and making factual findings in conformity with that legal framework, will ensure that "after a rigorous analysis, . . . the prerequisites of Rule 23(a) have been satisfied." *See Wal-Mart*, 564 U.S. at 350–51 (citation omitted).

ADELMAN, District Judge, concurring in part and dissenting in part:

I concur in all parts of the majority opinion except for Part III.C.2, in which the majority concludes that the district court abused its discretion by certifying the Medicaid subclass. According to the majority, the district court abused its discretion because it made an error of law when it assumed that a state-wide policy or practice that exposes all members of the proposed subclass to a substantial risk of not receiving Medicaid services violates the Medicaid statute. But the answer to the legal question of whether exposure to a risk of harm violates the Medicaid statute does not affect class certification in this case, where the class seeks only injunctive relief. So the district court's potential error of law did not affect its application of the Rule 23 standards, and therefore any such error did not result in an abuse of discretion. Moreover, the district court made findings of fact that support its decision to certify the Medicaid subclass, and those findings are not clearly erroneous. Accordingly, I would affirm the district court's certification of this subclass.

I.

The majority affirms the district court's certification of a class of Arizona foster children who seek to enjoin, under the Due Process Clause, certain state-wide policies that allegedly expose them to a substantial risk of not receiving certain medical services. Oddly, the majority then vacates the district court's certification of a subclass of the same children who seek to enjoin the exact same policies under the Medicaid statute. Under the majority's approach, the district court properly certified, under the Due Process Clause, a class of all foster children who challenge the state's allegedly subjecting them to a substantial risk of not receiving "timely access to health care, including

comprehensive evaluations, timely annual visits, semi-annual preventative dental health care, adequate health assessments, and immunizations." Maj. op. at 21. Yet the majority concludes that the district court erred in certifying a subclass of these children who seek to enjoin the same conduct under the Medicaid statute, even though Medicaid requires the state to provide them with those very same medical services. *See* 42 U.S.C. § 1396d(r) (defining early and periodic screening, diagnostic, and treatment services to include regular health, dental, and vision screening and appropriate immunizations).

According to the majority, this contradictory result is required because the district court misunderstood the difference between a claim under the Due Process Clause and a claim under the Medicaid statute. Under the Due Process Clause, exposure to a substantial risk of harm is itself a violation of law, even if the harm does not ultimately occur. Maj. op. at 34. In contrast, under the Medicaid statute, a violation is not complete until a child is denied required medical services (or fails to receive the services at the required time). *Id*.

I agree with the majority that this is indeed a difference between a claim under the Due Process Clause and a claim under the Medicaid statute. However, this difference has no relevance to class certification in this case, in which the plaintiffs seek only injunctive relief. As the majority acknowledges, a plaintiff may seek injunctive relief to prevent a statutory violation before it occurs. Maj. op. at 36. And that is exactly what the plaintiffs are trying to accomplish with the Medicaid subclass: they are trying to prevent Medicaid violations before they occur. The way they are trying to do this is by obtaining a single injunction that requires the defendants to do things, such as hire more

caseworkers, that will ensure that all children receive the services to which they are entitled under Medicaid. Thus, the claims of the Medicaid subclass present common questions that can be answered in one stroke. For example, either Arizona employs enough caseworkers to ensure that all children receive the EPSDT services required by Medicaid, or it does not; there is no need for a child-by-child inquiry to determine whether Arizona's staffing policies expose all children in Arizona's custody to a substantial risk of not receiving those services. *Cf. Parsons v. Ryan*, 754 F.3d 657, 680 (9th Cir. 2014) ("Either ADC employs enough nurses and doctors to provide adequate care to all of its inmates or it does not do so; there is no need for an inmate-by-inmate inquiry to determine whether all inmates in ADC custody are exposed to a substantial risk of serious harm by ADC staffing policies."). If the plaintiffs prove that Arizona does not employ enough caseworkers, then a single injunction requiring the state to hire more caseworkers will remove the substantial risk of Medicaid violations.

The situation would be different if the members of the Medicaid subclass sought damages. Because exposing a child to a risk of not receiving required Medicaid services does not itself violate the child's rights under Medicaid, the child could not seek damages until services were delayed or denied. But under the Due Process Clause, the child could seek at least nominal damages for a past exposure to a substantial risk of harm. Thus, if the district court had certified damages classes under both the Due Process Clause and the Medicaid statute, the majority would be right to vacate certification of the Medicaid subclass. To award damages under the Medicaid statute, the district court would have to review the facts applicable to each individual class member to determine whether he or she actually sustained a Medicaid violation—there would be no common question

that could be answered for all class members in one stroke. But again, in this case, where the plaintiffs seek only injunctive relief, there are common questions that can be answered in one stroke: whether the challenged policies—including failing to hire enough caseworkers—subject all children in the foster care system to a substantial risk of not receiving required services, such as timely immunizations. Thus, the difference in what the plaintiffs must show to prove *violations* of the Due Process Clause and the Medicaid statute is not relevant to certification of the proposed injunction classes.

The majority concludes that vacatur of the Medicaid subclass is required because Ninth Circuit cases hold that "an error of law is a per se abuse of discretion." Maj. op. at 13. The majority reads too much into this language. The majority, in effect, reads this language to mean that if a district judge misstates any legal principle in the course of stating its reasons for a discretionary decision, then the appellate court has no choice but to vacate the decision and remand for a do-over. But that cannot be what the language means. Instead, the language must mean that when a district court errs in its understanding of the legal standards that govern its discretionary decision, the resulting discretionary decision must be viewed as an abuse of discretion. But errors of law that do not affect the district court's discretionary decision can be disregarded.

For example, if in this case the district court wrote that the defendants could be liable under the Due Process Clause if the plaintiffs proved that they were negligent, the court would have misstated the law, for, under the Due Process Clause, the defendants could be liable only if the plaintiffs proved deliberate indifference. But this error of law would not have affected the district court's discretionary decision

to certify the class. That is so because the mental state for a due-process violation is not an element that affects commonality or any other class-certification requirement—the defendant's mental state is amenable to class-wide proof regardless of whether it is negligence or deliberate indifference. Thus, even if the district court identified the wrong mental state during class certification, it would not follow that the court abused its discretion in certifying a class under the Due Process Clause. Of course, the district court would commit reversible error if it later granted relief to the class based on a negligence theory, but in that case, we would reverse the judgment granting relief to the class—we would not reverse the district court's order certifying the class.

The district court's supposed legal error in this case is no different than the district court's legal error in my example. Because the Medicaid subclass does not seek damages, it does not matter to class certification that a Medicaid violation does not occur until services are delayed or denied. Thus, even if the district court thought that exposure to a risk of not receiving services violates the Medicaid statute, it would not have made an error of law that affected its application of the Rule 23 standards to the facts of this case.

## II.

The majority acknowledges that the district court identified common questions that are "tethered to the Medicaid Act in particular." Maj. op. at 35. But the majority then faults the district court for failing to make "further findings" that clarify "whether [the challenged state-wide policies and practices] caused the same deprivations of services or risks of such deprivations across the whole subclass, or whether some categories of children were deprived of services while others were not." *Id.* at 35. This

is a curious statement. The majority seems to be saying that the district court failed to find that the challenged policies expose all children in the Medicaid subclass to a substantial risk of not receiving timely access to health care. But that flatly contradicts the majority's reasons for affirming the district court's certification of the General Class. There, the majority found that the district court properly certified the General Class because the question of whether the defendants "fail[ed] to provide timely access to health care"—and thus exposed all foster children to a substantial risk of not receiving that health care—could be answered in one stroke. *Id.* at 21. As I noted above, all members of the proposed Medicaid subclass are also members of the General Class, and the health care at issue in the claims of the General Class are services required by the Medicaid statute. Thus, if, as the majority concludes, the district court found that the defendants' policies and practices expose all children in the General Class to a substantial risk of not receiving those services, then it necessarily also found that those same policies and practices expose all children in the Medicaid subclass to a substantial risk of not receiving those services. Therefore, the district court made the findings necessary to support its decision to certify the Medicaid subclass.

The majority also expresses concern over whether the district court made the findings necessary to support its conclusion that B.K. is typical of those in the Medicaid subclass. The majority states that the district court failed to address "whether every other child had, like B.K., been denied adequate medical care or was subject to an imminent risk of a statutory violation." *Id.* at 35 n.4. But whether other children in the class had been denied adequate medical care is irrelevant, since the class is not seeking to remedy past violations. Moreover, "imminent risk of a statutory violation" is a legal concept that governs standing, not class

certification. *See, e.g.*, *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). The majority agrees that because B.K. has standing to seek injunctive relief on behalf of the Medicaid subclass, the standing inquiry ends there and there is no need to separately consider whether each class member has standing. Maj. op. at 16, 30. Thus, the majority again contradicts its own reasoning when it faults this district court for failing to make findings showing that every child in the Medicaid subclass is at "imminent risk" of a Medicaid violation.

I also struggle to discern how, in the majority's view, B.K.'s claim for injunctive relief could be "typical" of the claims of all foster children in Arizona for purposes of the Due Process Clause but not for purposes of the Medicaid statute. Again, I emphasize that, under both the Due Process Clause and the Medicaid statute, B.K. challenges the exact same state-wide policies that create the exact same risk of not receiving the exact same medical services. The only difference is that, to obtain an injunction under the Medicaid statute, B.K. does not have to prove deliberate indifference, as she must to obtain an injunction under the Due Process Clause. It is thus logically impossible for B.K.'s claim to be typical of those in the class for purposes of the Due Process Clause but not for purposes of the Medicaid statute.

## III.

The majority agrees that "Rule 23's commonality requirement can be satisfied in a statutory case by a common risk of a future violation that flows from the same state-wide policy or practice." Maj. op. at 36. In this case, the members of the Medicaid subclass allege that they are subject to a common risk of not receiving required Medicaid services that flows from the same state-wide policies and practices, including failing to hire enough caseworkers. Yet here the

majority reasons that we must vacate the district court's certification of the Medicaid subclass "because the district court did not make factual findings or exercise its discretion based on this understanding of commonality when it certified the Medicaid subclass." Maj. op. at 36–37.

I am not sure what the majority means when it says that the district court did not "exercise its discretion based on this understanding of commonality." The district court exercised its discretion to certify a subclass of all children who are eligible for certain Medicaid services after finding that the subclass's claim presents a common question that can be answered for all subclass members in one stroke. The majority does not conclude that, in making this finding, the district court erroneously applied *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011), or any other case on commonality. Thus, the district court had a proper "understanding of commonality" when it exercised its discretion to certify this subclass.

Moreover, the district court actually made the findings of fact necessary to support its finding of commonality for the Medicaid subclass. The court found that the plaintiffs were challenging "several statewide practices affecting the proposed Medicaid Subclass," including excessive caseworker caseloads and failure to properly coordinate services and monitor service providers. The court also found that the validity of these practices could be determined in one stroke and without making individualized inquiries into any specific child's medical diagnosis or treatment. Thus, the district court correctly determined that the subclass could be certified for purposes of seeking injunctive relief against the challenged policies.

Although the majority correctly notes that the district court did not expressly state that every subclass member is

subject to an identical "significant risk" of a future Medicaid violation, this does not require that we vacate certification of the subclass. Like "imminent risk," "significant risk" is a legal concept that governs standing, not class certification, *see Cent. Delta Water Agency v. United States*, 306 F.3d 938, 949 (9th Cir. 2002), and the majority agrees that B.K. has standing to seek injunctive relief against the challenged state-wide policies under the Medicaid statute. The majority expressly states that the district court correctly found that B.K. has standing to seek injunctive relief against the defendants' policies because they expose her to a risk of not receiving adequate medical care in the future. Maj op. 17. Thus, the majority agrees that the district court made the factual findings necessary to support standing.

As for class certification, there is no requirement that the district court find that every subclass member is exposed to an identical significant risk of a future Medicaid violation. What the district court must find is that the plaintiffs' *claim* involves an *allegation* that all subclass members are exposed to a risk of a future Medicaid violation, and that the truth of this allegation can be decided for all subclass members in a single stroke. *See Parsons*, 754 F.3d at 678 (identifying the "common contentions" as "whether the specified statewide policies and practices" to which the class members are all subjected "expose them to a substantial risk of harm"). Obviously, the defendants dispute that their policies are deficient and will try to show during the merits phase of the case that they properly care for all children and therefore expose none of them to a substantial risk of not receiving medical care. The plaintiffs do not have to prove, at the class-certification stage, that the defendants' policies are in fact deficient. What the plaintiffs must do at class certification is show that the question of whether the policies are deficient can be resolved on a class-wide basis. And here, the district

court found that the plaintiffs did that. The court expressly found that "[e]ven if health issues may differ, every child in the [DCS] custody is necessarily subject to the same medical, mental health, and dental care policies and practices." The court noted that "[a]ny one child could easily fall ill, be injured, need treatment, require a diagnostic, need emergency care, crack a tooth, or require mental health treatment." Thus, the district court found that "every single child in the foster care system faces a substantial risk of serious harm" *if* DCS policies fail to ensure the delivery of appropriate medical care to children in the system.

It is true that the district court made the above findings in the context of certifying the General Class. But to repeat: every child in the Medicaid subclass is also a member of the General Class, and both classes challenge the exact same policies involving the exact same medical services. Thus, if the challenged policies subject every child in the General Class to a substantial risk of not receiving medical services, they necessarily also subject every child in the Medicaid subclass to a substantial risk of not receiving those services. Therefore, the district court's fact-finding supports its certification of both the General Class and the Medicaid subclass.

## IV.

In sum, the district court concluded that the claims of the Medicaid subclass involve common contentions that may be resolved in one stroke: whether the challenged state-wide policies and practices subject all subclass members to a substantial risk of not receiving services required by the Medicaid statute. In reaching this conclusion, the district court did not err in applying the commonality standard, base its conclusion on clearly erroneous findings of fact, or otherwise abuse its discretion. Accordingly, I respectfully

dissent from the majority's vacatur of the district court's certification of the Medicaid subclass.