**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

| | |
|---|---|
| SYLVESTER OWINO; JONATHAN GOMEZ, on behalf of themselves, and all others similarly situated, | No.21-55221 |
| | D.C. No. 3:17-cv-01112-JLS-NLS |
| *Plaintiffs-Appellees,* | |
| v. | |
| CORECIVIC, INC., a Maryland corporation, | ORDER AND AMENDED OPINION |
| *Defendant-Appellant.* | |

Appeal from the United States District Court
for the Southern District of California
Janis L. Sammartino, District Judge, Presiding

Argued and Submitted February 18, 2022
San Francisco, California

Filed June 3, 2022
Amended December 20, 2022

Before:  M. Margaret McKeown and William A. Fletcher, Circuit Judges, and Richard D. Bennett,[*] District Judge.

Order;
Opinion by Judge McKeown;
Dissent by Judge VanDyke

## SUMMARY[**]

### Class Certification / Victims of Trafficking and Violence Protection Act

The panel filed (1) an order denying a petition for panel rehearing and, on behalf of the court, a petition for rehearing en banc; and (2) an opinion (a) amending and superceding the panel's original opinion and (b) affirming the district court's order certifying three classes in an action brought under the Victims of Trafficking and Violence Protection Act of 2000 by individuals who were incarcerated in private immigration detention facilities owned and operated by CoreCivic, Inc., a for-profit corporation.

U.S. Immigration and Customs Enforcement contracts with CoreCivic to incarcerate detained immigrants in 24 facilities across 11 states.  Plaintiffs, detained solely due to their immigration status and neither charged with, nor

---

[*]The Honorable Richard D. Bennett, United States District Judge for the District of Maryland, sitting by designation.

[**]This summary constitutes no part of the opinion of the court.  It has been prepared by court staff for the convenience of the reader.

convicted of, any crime, alleged that the overseers of their private detention facilities forced them to perform labor against their will and without adequate compensation in violation of the Victims of Trafficking and Violence Protection Act of 2000, the California Trafficking Victims Protection Act ("California TVPA"), various provisions of the California Labor Code, and other state laws.

The panel held that the district court properly exercised its discretion in certifying a California Labor Law Class, a California Forced Labor Class, and a National Forced Labor Class.

The panel held that, as to the California Forced Labor Class, plaintiffs submitted sufficient proof of a classwide policy of forced labor to establish commonality. Plaintiffs established predominance because the claims of the class members all depended on common questions of law and fact. The panel agreed with the district court that narrowing the California Forced Labor Class based on the California TVPA's statute of limitations was not required at the class certification stage.

For the same reasons as above, the panel held that, as to the National Forced Labor Class, the district court did not abuse its discretion in concluding that plaintiffs presented significant proof of a classwide policy of forced labor and that common questions predominated over individual ones. The panel held that under *Moser v. Benefytt, Inc.*, 8 F.4th 872 (9th Cir. 2021), CoreCivic's personal jurisdiction challenge with respect to the claim of non-California-facility class members was an issue for the district court to resolve. The panel declined to vacate the certification of the National Forced Labor Class, but it held that CoreCivic retained its personal jurisdiction defense, and the panel

remanded the personal jurisdiction question to the district court for consideration at the appropriate time.

As to the California Labor Law Class, the panel held that plaintiffs established that damages were capable of measurement on a classwide basis, and they did not need to present a fully formed damages model when discovery was not yet complete. The panel agreed with the district court that the named plaintiffs were typical of the class they sought to represent and their allegations, if true, fit within California's Unfair Competition Law and the state labor law provisions they invoked. Narrowing the class based on statute of limitations was not required at the certification stage. The panel held that the district court did not abuse its discretion in certifying a failure-to-pay and waiting-time claim, which was affirmatively interwoven in plaintiffs' pleadings.

Judge VanDyke, joined by Judges Callahan, Bennett, R. Nelson, and Bumatay, and by Judge Ikuta except as to Part II-A, dissented from the denial of rehearing en banc. In Part II-A, Judge VanDyke wrote that the panel created inter- and intra-circuit conflicts by eliminating the actual causation requirement for "forced labor" claims under the TVPA. In Part II-B, Judge VanDyke wrote that rehearing en banc also was warranted because the panel transgressed the holding of *Wal-Mart Stores v. Dukes*, 564 U.S. 338 (2011), disregarding Fed. R. Civ. P. 23's commonality requirement by concluding that a handful of declarations from detainees at only one of the defendant's 24 facilities was significant proof of the defendant's nationwide policies and practices.

## COUNSEL

Nicholas D. Acedo (argued), Daniel P. Struck, Rachel Love, Ashlee B. Hesman, and Jacob B. Lee, Struck Love Bojanowski & Acedo PLC, Chandler, Arizona, for Defendant-Appellant.

Eileen R. Ridley (argued) and Alan R. Ouellette, Foley & Lardner LLP, San Francisco, California; Robert L. Teel, Law Office of Robert L. Teel, Seattle, Washington; for Plaintiffs-Appellees.

## ORDER

The opinion filed June 3, 2022, *Owino v. CoreCivic, Inc.*, 36 F.4th 839 (9th Cir. 2022) is amended and superceded by the opinion filed concurrently with this order.

The full court has been advised of the petition for rehearing en banc. A judge of this Court requested a vote on the petition for rehearing en banc. A majority of the non-recused active judges did not vote to rehear the case en banc. Fed. R. App. 35. The petition for panel rehearing and for rehearing en banc is DENIED. No further petitions for panel rehearing or rehearing en banc will be entertained.

# OPINION

McKEOWN, Circuit Judge:

This appeal arises from a class action filed by individuals who were incarcerated in private immigration detention facilities owned and operated by a for-profit corporation, CoreCivic, Inc. These individuals—detained solely due to their immigration status and neither charged with, nor convicted of, any crime—allege that the overseers of their private detention facilities forced them to perform labor against their will and without adequate compensation. Our inquiry on appeal concerns only whether the district court properly certified three classes of detainees. Considering the significant deference we owe to the district court when reviewing a class certification, as well as the district court's extensive and reasoned findings, we affirm the certification of all three classes.

## BACKGROUND

In 2017, Sylvester Owino ("Owino") and Jonathan Gomez ("Gomez") (collectively "Owino") brought a class action suit against CoreCivic. Both men were previously held in a civil immigration detention facility operated by CoreCivic—Owino from 2005 to 2015, and Gomez from 2012 to 2013. They filed suit "on behalf of all civil immigration detainees who were incarcerated and forced to work by CoreCivic," seeking declaratory and injunctive relief and damages, among other remedies, for "forcing/coercing detainees to clean, maintain, and operate CoreCivic's detention facilities in violation of both federal and state human trafficking and labor laws." Specifically, Owino alleged violations of the Victims of Trafficking and Violence Protection Act of 2000, 18 U.S.C. § 1589 *et seq.*

("TVPA"), California Trafficking Victims Protection Act, Cal. Civ. Code § 52.5 ("CTVPA"), various provisions of the California Labor Code, and other state laws.

Pursuant to 8 U.S.C. § 1231(g), U.S. Immigration and Customs Enforcement ("ICE") contracts with CoreCivic to incarcerate detained immigrants in 24 facilities across 11 states. According to Owino, those incarcerated in these facilities "are detained based solely on their immigration status and have not been charged with a crime." Because of this, ICE states these detainees "shall not be required to work, except to do personal housekeeping." These housekeeping duties are delineated in ICE's Performance-Based National Detention Standards ("Standards"): "1. making their bunk beds daily; 2. stacking loose papers; 3. keeping the floor free of debris and dividers free of clutter; and 4. refraining from hanging/draping clothing, pictures, keepsakes, or other objects from beds, overhead lighting fixtures or other furniture." Performance-Based National Detention Standards 2011, at 406 (revised Dec. 2016), https://www.ice.gov/doclib/detention-standards/2011/pbnds 2011r2016.pdf. The Standards also require facilities to provide detainees with the "opportunity to participate in a voluntary work program" ("Work Program") for which they must be compensated at least $1 per day. *Id.* at 406, 407.

Despite these guidelines, Owino contends that, "as a matter of policy," CoreCivic compelled him and detainees across its facilities to work "as a virtually free labor force to complete 'essential' work duties at their facilities," including such "foundational tasks" as kitchen and laundry services. CoreCivic's written policies require "all" detainees to "maintain[] the common living area [i.e., not the bunk bed area] in a clean and sanitary manner." The policies further require "[d]etainee/inmate workers" to carry out a "daily

cleaning routine," to remove trash, sweep, mop, clean toilets, clean sinks, clean showers, and clean furniture, and to undertake "[a]ny other tasks assigned by staff in order to maintain good sanitary conditions."  Yet, according to Owino, CoreCivic generally paid ICE detainees either $1 per day or nothing at all.  Owino further contends that CoreCivic paid ICE detainees between $.75 and $1.50 per day for work that it "misclassified" as "volunteer," thus failing to pay wages that approximated the minimum hourly wage required by California law.

On April 15, 2019, Owino filed a motion for class certification, seeking to certify five classes:

> 1.     California Labor Law Class: All ICE detainees who (i) were detained at a CoreCivic facility located in California between May 31, 2013, and the present, and (ii) worked through CoreCivic's Voluntary Work Program during their period of detention in California.
>
> 2.     California Forced Labor Class: All ICE detainees who (i) were detained at a CoreCivic facility located in California between January 1, 2006, and the present, (ii) cleaned areas of the facilities above and beyond the personal housekeeping tasks enumerated in the Standards, and (iii) performed such work under threat of discipline irrespective of whether the work was paid or unpaid.
>
> 3.     National Forced Labor Class: All ICE detainees who (i) were detained at a CoreCivic facility between December 23, 2008, and the present, (ii) cleaned areas of the facilities above and beyond the personal housekeeping tasks enumerated in the Standards, and (iii) performed such work under

threat of discipline irrespective of whether the work was paid or unpaid.

4.      California Basic Necessities Class: All ICE detainees who (i) were detained at a CoreCivic facility located in California between January 1, 2006, and the present, (ii) worked through CoreCivic's Work Program, and (iii) purchased basic living necessities through CoreCivic's commissary during their period of detention in California.

5.      National Basic Necessities Class: All ICE detainees who (i) were detained at a CoreCivic facility between December 23, 2008, and the present, (ii) worked through CoreCivic's Work Program, and (iii) purchased basic living necessities through CoreCivic's commissary during their period of detention.

A year later—following numerous filings, oral argument, and supplemental briefing—the district court certified three of the proposed five classes: (1) the California Labor Law Class, (2) the California Forced Labor Class, and (3) the National Forced Labor Class.  In an extensive and thoughtful order, the district court found the following:

1.      California Labor Law Class: Owino and Gomez "adequately have established that they were never paid a minimum wage through the [Work Program]," that they "never received wage statements," and that CoreCivic "failed to pay compensation upon termination" and "imposed unlawful terms and conditions of employment." There were sufficient "common, predominating questions" to certify the class.

2.      California Forced Labor Class: Owino and Gomez "sufficiently have demonstrated" that CoreCivic facilities in California "implemented common sanitation and disciplinary policies that together may have coerced detainees to clean areas of [CoreCivic's California] facilities beyond the personal housekeeping tasks enumerated in the ICE [Standards]."

3.      National Forced Labor Class: Owino and Gomez "sufficiently have demonstrated" the same regarding CoreCivic facilities nationwide.

Due to the vulnerability of the class members and the "risks, small recovery, and relatively high costs of litigation," the district court concluded that "class-wide litigation is superior" because "no viable alternative method of adjudication exists."

## ANALYSIS

We review the district court's class certification for "abuse of discretion." *B.K. ex rel. Tinsley v. Snyder*, 922 F.3d 957, 965 (9th Cir. 2019). As we set out at length in *Snyder*,

> An error of law is a per se abuse of discretion. Accordingly, we first review a class certification determination for legal error under a de novo standard, and if no legal error occurred, we will proceed to review the decision for abuse of discretion. A district court applying the correct legal standard abuses its discretion only if it (1) relies on an improper factor, (2) omits a substantial

factor, or (3) commits a clear error of judgment in weighing the correct mix of factors. Additionally, we review the district court's findings of fact under the clearly erroneous standard, meaning we will reverse them only if they are (1) illogical, (2) implausible, or (3) without support in inferences that may be drawn from the record.

*Id.* at 965–66 (quoting *Sali v. Corona Reg'l Med. Ctr.*, 909 F.3d 996, 1002 (9th Cir. 2018)). Notably, in "reviewing a grant of class certification, we accord the district court noticeably more deference than when we review a denial of class certification." *Wolin v. Jaguar Land Rover N. Am., LLC*, 617 F.3d 1168, 1171 (9th Cir. 2010).

In assessing whether to certify a class, the district court determines whether the requirements of Rule 23 are met. Rule 23 provides:

One or more members of a class may sue or be sued as representative parties on behalf of all members only if: (1) the class is so numerous that joinder of all members is impracticable ["numerosity"]; (2) there are questions of law or fact common to the class ["commonality"]; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class ["typicality"]; and (4) the representative parties will fairly and adequately protect the interests of the class ["adequacy"].

Fed. R. Civ. P. 23(a). Additionally, a proposed class must

satisfy one of the subdivisions of Rule 23(b).  *Comcast Corp. v. Behrend*, 569 U.S. 27, 33 (2013).  Owino seeks to proceed under Rule 23(b)(3), which requires "the court find[] that the [common questions] predominate over any questions affecting only individual members ['predominance'], and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy ['superiority']."  Fed R. Civ. P. 23(b)(3).  The district court made both findings.

CoreCivic brings three challenges to each of the three certified classes.  We review each of these challenges in turn.

## I.    CALIFORNIA FORCED LABOR CLASS

### A.  Class-wide Policy of Forced Labor

We first consider CoreCivic's assertion that Owino failed to present "[s]ignificant proof" of a class-wide policy of forced labor, thus defeating commonality.  *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 353 (2011).  To support the California Forced Labor class, Owino provided the declarations of four detainees, all from one facility, but this was *not* the extent or the focus of Owino's "significant proof," nor was it the focus of the district court's decision.  Rather, Owino centered his argument, and the district court centered its holding, on the text of CoreCivic's corporate policies.  The sanitation policy requires detainees to remove trash, wash windows, sweep and mop, "thoroughly" scrub toilet bowls, sinks, and showers, and undertake sundry other cleaning responsibilities across the facility.  On their face, these policies appear to go beyond those minimal tidying responsibilities laid out in the ICE Standards.  The discipline policy further makes clear that detainees are subject to a range of punishments, including disciplinary segregation, for refusal to "clean assigned living area" or "obey a staff

member/officer's order."

The persuasive weight of the text of these policies is augmented by the statements of ICE detainees themselves, who declared that they were in fact required to clean common areas—without payment and under threat of punishment—in line with the policies.  Further, one of CoreCivic's own senior managers testified that CoreCivic facilities do not have the ability to opt out of these company-wide, "standard policies."

Commonality is necessarily established where there is a class-wide policy to which all class members are subjected. *Parsons v. Ryan*, 754 F.3d 657, 678 (9th Cir. 2014).  And while "the mere existence of a facially defective written policy—without any evidence that it was implemented in an unlawful manner—does not constitute '[s]ignificant proof' that a class of employees were [*sic*] subject to an unlawful practice," *Davidson v. O'Reilly Auto Enters., LLC*, 968 F.3d 955, 968 (9th Cir. 2020) (internal citation omitted), Owino relied on the written policies *as well as* the testimony of former ICE detainees and CoreCivic's own manager. Although the company "may wish to distance itself from [its employee's] statements," here the "admissions were material and [are] properly before us."  *Abdullah v. U.S. Sec. Assocs.*, 731 F.3d 952, 966 (9th Cir. 2013).

In view of the highly deferential abuse of discretion standard and the full scope of evidence in the record, we reject CoreCivic's claim that Owino failed to provide "significant proof" of the class-wide policy necessary to satisfy the commonality requirement.

## B.  Predominance of Common Questions

We next consider CoreCivic's claim that Owino failed to

establish that common questions predominate over individual ones, thus defeating predominance. The predominance inquiry tests "whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 453 (2016) (quoting *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 623 (1997)). Here, they are.

As the district court noted, the California Forced Labor class members "share a large number of common attributes, including that they are immigrants who are or were involuntarily detained in [CoreCivic's] facilities and subjected to common sanitation and disciplinary policies." The claims of these class members all depend on common questions of law and fact—whether CoreCivic utilized threats of discipline to compel detainees to clean its California facilities in violation of state and federal human trafficking statutes. This is a quintessential "common question" as defined by the Supreme Court: "the same evidence will suffice for each member to make a prima facie showing [or] the issue is susceptible to generalized, class-wide proof." *Tyson Foods*, 577 U.S. at 453 (citation omitted).

In other words, the question is appropriate for class-wide resolution because either CoreCivic's company-wide policies and practices violated the law and the rights of the class members, or they didn't. *See Parsons*, 754 F.3d at 678 (holding that the "policies and practices to which all members of the class are subjected . . . are the 'glue' that holds together the putative class . . . either each of the policies and practices is unlawful as to every inmate or it is not"); *see also Gonzalez v. U.S. Immigr. & Customs Enf't*, 975 F.3d 788, 808 (9th Cir. 2020).

CoreCivic argues against predominance largely by attempting to reframe the inquiry, asserting that the district court should have asked whether each class member actually has a viable California TVPA claim.  However, this is not the applicable test.  In *Tyson Foods*, the Supreme Court instructs that

> [t]he predominance inquiry asks whether the common, aggregation-enabling, issues in the case are more prevalent or important than the non-common, aggregation-defeating, individual issues.   When one or more of the central issues in the action are common to the class and can be said to predominate, the action may be considered proper under Rule 23(b)(3) even though other important matters will have to be tried separately, such as damages or some affirmative defenses peculiar to some individual class members.

577 U.S. at 453 (internal citations and quotation marks omitted); *see also Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods*, 31 F.4th 651, 681–82 (9th Cir. 2022) (en banc).

## C.  Statute of Limitations

Finally, we consider CoreCivic's argument that the district court should have narrowed the proposed California Forced Labor class based on the statute of limitations.  While Owino seeks to include all ICE detainees held at a CoreCivic facility in California between January 1, 2006, and the present, CoreCivic argues that because the California TVPA has a seven-year statute of limitations, no detainee who was released before May 31, 2010, can bring a claim.  *See* Cal.

Civ. Code § 52.5(c).  The district court ruled that such a finding was premature at the class certification stage: "If discovery indicates that the class period should be limited, the Court will entertain a motion to that effect; however, at this stage in the litigation and on the record before it, the Court is not inclined to narrow the class period."

We agree with the district court that narrowing the class based on statute of limitations is not required at the certification stage.  Along with our sister circuits, we have held this in the context of the predominance inquiry.  *See, e.g.*, *Williams v. Sinclair*, 529 F.2d 1383, 1388 (9th Cir. 1975) ("The existence of a statute of limitations issue does not compel a finding that individual issues predominate over common ones."); *see also In re Monumental Life Ins. Co.*, 365 F.3d 408, 420–21 (5th Cir. 2004); *Waste Mgmt. Holdings, Inc. v. Mowbray*, 208 F.3d 288, 296 (1st Cir. 2000).  We now clarify that this principle is applicable to certification more broadly.  After all, "[e]ven after a certification order is entered, the judge remains free to modify it in the light of subsequent developments in the litigation." *Gen. Tel. Co. of the Sw. v. Falcon*, 457 U.S. 147, 160 (1982).  CoreCivic cites no case law to the contrary.  We therefore hold that the district court did not abuse its discretion in declining to narrow the California Forced Labor class.

## II.    NATIONAL FORCED LABOR CLASS

We can dispense with CoreCivic's first two challenges to the National Forced Labor class easily, as these challenges are virtually identical to those directed at the California Forced Labor class.  For the same reasons discussed above, the district court did not abuse its discretion in concluding that Owino presented significant proof of a class-wide policy

of forced labor.  Likewise, the district court did not abuse its discretion in concluding that common questions predominate over individual ones.  CoreCivic's argument that the TVPA necessitates a subjective, individualized inquiry fails due to contrary language in the statute, *see, e.g.*, 18 U.S.C. § 1589(c)(2) (defining "serious harm" as that which would compel a "reasonable person" to perform or continue performing labor to avoid incurring such harm), as well as the broader predominance test prescribed by precedent.  *Tyson Foods*, 577 U.S. at 453.

The statute's causal element—prohibiting the obtainment of labor "by means of" one of the statutorily enumerated harms, *see* 18 U.S.C. § 1589(a)—may similarly be inferred by class-wide evidence.  *See Menocal v. GEO Grp., Inc.*, 882 F.3d 905, 918–20 (10th Cir. 2018); *Rosas v. Sarbanand Farms, LLC*, 329 F.R.D. 671, 689 (W.D. Wash. 2018) ("An allegation that the defendant engaged in a common scheme or practice to coerce labor from putative class members may be sufficient to establish that the class's claim is susceptible to class-wide resolution.").  While class-wide causation depends on the context, *see Poulos v. Caesars World, Inc.*, 379 F.3d 654, 665–66 (9th Cir. 2004) (requiring individualized showing of causation in a "narrow and case-specific" RICO-claim case because "gambling is not a context in which we can assume that potential class members are always similarly situated"), in *Walker v. Life Insurance Co. of the Southwest*, we recognized that reliance can be inferred on a class-wide basis.  953 F.3d 624, 630–31 (9th Cir. 2020).  Here, Owino offered as evidence a written discipline policy stating that detainees will be punished if they fail to clean or obey staff orders.  The district court did not abuse its discretion in concluding that a factfinder could reasonably draw a class-wide causation inference from this

uniform policy.

However, CoreCivic's appeal with respect to personal jurisdiction is not resolved by what we wrote, above, with respect to the National Forced Labor class. *See Bristol-Myers Squibb Co. v. Superior Ct. of Cal.*, 137 S. Ct. 1773 (2017). The district court ruled that CoreCivic had waived its personal jurisdiction challenge with respect to the claim of the non-California-facility class members, because it did not raise such a defense in its first responsive pleadings (which CoreCivic filed *after* the Supreme Court decided *Bristol-Myers Squibb*). After the district court's ruling and after CoreCivic filed its opening brief in this appeal, the Ninth Circuit squarely addressed this issue: prior to class certification, a defendant does "not have 'available' a Rule 12(b)(2) personal jurisdiction defense to the claims of unnamed putative class members who were not yet parties to the case." *Moser v. Benefytt, Inc.*, 8 F.4th 872, 877 (9th Cir. 2021).

Although Owino maintains that *Moser* was wrongly decided, we have no authority to ignore circuit precedent. *See Miller v. Gammie*, 335 F.3d 889, 900 (9th Cir. 2003) (en banc). Owino's challenge to the merit of CoreCivic's personal jurisdiction defense is an issue for the district court to resolve. *See Moser*, 8 F.4th at 879.

We decline to vacate the certification of the National Forced Labor class, but we hold that CoreCivic retains its personal jurisdiction defense and remand the personal jurisdiction question to the district court for consideration at the appropriate time.

## III.    CALIFORNIA LABOR LAW CLASS

### A.  Damages Capable of Class-wide Measurement

We first consider CoreCivic's arguments that the members of the California Labor Law class have not presented "a fully formed damages model" and thus cannot be certified.  Owino claims that CoreCivic misclassified the detainees participating in the Work Program as "volunteers" rather than "employees" and thus failed to pay them the minimum wage required in California for "employees," in violation of California wage and hour law.  The district court certified the class, holding that Owino had met the "evidentiary" burden of "present[ing] proof that damages are capable of being measured on a class-wide basis."

We agree with the district court that Owino did not need to present a fully formed damages model "when discovery was not yet complete and pertinent records may have been still within Defendant's control."  Rather, "plaintiffs must show that 'damages are capable of measurement on a classwide basis,' in the sense that the whole class suffered damages traceable to the same injurious course of conduct underlying the plaintiffs' legal theory." *Just Film, Inc. v. Buono*, 847 F.3d 1108, 1120 (9th Cir. 2017) (quoting *Comcast*, 569 U.S. at 34).  In other words, "plaintiffs must be able to show that their damages stemmed from the defendant's actions that created the legal liability." *Vaquero v. Ashley Furniture Indus., Inc.*, 824 F.3d 1150, 1154 (9th Cir. 2016) (citation omitted).

There is a clear line of causation between the alleged misclassification of detainee employees as "volunteers" and the deprivation of earnings they may have suffered as a consequence of the violation of California wage and hour laws. *See id.* at 1155 (holding that, "[i]n a wage and hour

case . . . the employer-defendant's actions *necessarily* caused the class members' injury"). According to evidence from a CoreCivic manager, spreadsheets of wages paid, and CoreCivic's corporate policy itself, ICE detainees participated in the Work Program across CoreCivic's facilities, for which they were almost never paid more than $1.50 per day. If CoreCivic did indeed misclassify these participants as "volunteers" (e.g., because the detainees should have been considered "employees"), CoreCivic would necessarily have failed to pay the minimum hourly wage required by California law. Thus, any damages that the class members are owed necessarily "stemmed from [CoreCivic's] actions." *Id*.

Owino presented sufficient evidence to show that damages are *capable* of measurement on a class-wide basis. This evidence includes documentation of "typical" shift lengths, the days worked by ICE detainees, the wages paid, and the job assignments. Additional testimony and CoreCivic records can establish details about which detainees participated in the Work Program, *see Ridgeway v. Walmart Inc.*, 946 F.3d 1066, 1087 (9th Cir. 2020), and as the Supreme Court emphasized in *Tyson Foods*, sufficiently reliable representative or statistical evidence can be used to establish the hours that a class of employees had worked. 577 U.S. at 459.

### B. Narrowing the Class

In seeking certification of the California Labor Law class, Owino alleged that detainees' participation in the Program violated a variety of state labor law provisions, as well as California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200, *et seq*. CoreCivic notes, correctly: "Other than the California UCL claim [which has

a four-year statute of limitations, *id.* § 17208], all other state law claims have a one-, two-, or three-year statute of limitations."  CoreCivic thus argues that Owino is barred from representing this class at all, because his last day in the Work Program was May 22, 2013, which is more than four years before he filed the May 31, 2017, complaint.  (Owino disputes this date, claiming he worked until his release on March 9, 2015.)  CoreCivic further argues that Gomez is time-barred from pursuing non-UCL claims, because his last day in the Work Program was September 7, 2013.

The district court held that, for the purposes of the certification motion, even if the plaintiffs' claims under the California Labor Code are time-barred, they could still recover for the majority of the alleged violations under the UCL because the UCL prohibits unfair competition, defined as "any unlawful, unfair or fraudulent business act or practice," Cal. Bus. & Prof. Code § 17200, and naturally this includes such violations of California's wage and hour law. Under this characterization, the class period for all claims seeking remedies under the UCL begins May 31, 2013; the period for waiting-time and failure-to-pay claims begins May 31, 2014; and the period for claims as to the alleged failure to provide wage statements begins May 31, 2016 (for remedies pursuant to Cal. Code Civ. Proc. § 340), or May 31, 2014 (for remedies pursuant to Cal. Code Civ. Proc. § 338).

As to the named plaintiffs, the district court ruled that neither Owino nor Gomez is typical of the members of the California Labor Law class seeking penalties under California Labor Code § 226 (which requires employers to provide wage statements to employees), and that Gomez is not typical of members of the California Labor Law Class seeking waiting-time penalties under California Labor Code

§ 203.  Nonetheless, the court found that Owino is part of the California Labor Law class for the wage claims, for failure to pay compensation upon termination, and for waiting time penalties and actual damages for the failure to provide wage statements, while Gomez is part of the California Labor Law class for the wage claims.  Due to CoreCivic's "belated assertion of . . . factual disputes concerning whether Mr. Owino worked during the Class Period for the California Labor Law Class," the district court stated it was "disinclined to resolve this issue at the class certification stage . . . particularly given that Mr. Gomez remains a viable class representative for the majority of the claims of the California Labor Law Class."

Because plaintiffs can recover for almost all of the alleged violations under the UCL, the district court properly rejected CoreCivic's argument against certification as predicated on "a distinction without a difference."  The district court appropriately exercised its discretion by declining to resolve a factual matter that CoreCivic raised for the first time in its post-hearing supplemental brief, and which the district court concluded was not dispositive of certification.

We agree with the district court that Owino and Gomez are typical of the class they are seeking to represent and their allegations, if true, fit within the statutes they invoke. Although they may run into statute of limitations issues— some disputed and unproven—narrowing the class based on statute of limitations is not required at the certification stage. *Cf. Int'l Woodworkers of Am. v. Chesapeake Bay Plywood Corp.*, 659 F.2d 1259, 1270 (4th Cir. 1981) ("Courts passing upon motions for class certification have generally refused to consider the impact of such affirmative defenses as the statute of limitations on the potential representative's

case.").

### C. Failure-to-pay and Waiting-time Claim

Finally, CoreCivic argues that because Owino and Gomez "did not reference their failure-to-pay/waiting-time claim ([Cal. Labor Code] §§ 201–203)" in their motion for class certification, the district court should not have certified that claim as one common to the California Labor Law class. Because the claims are affirmatively interwoven in Owino's pleadings, the district court did not abuse its discretion in certifying this claim.

To begin, the complaint included California Labor Code §§ 201–03 among the causes of action for the California Labor Law class:

> Plaintiffs and Class Members incorporate the above allegations by reference.
>
> California Labor Code §§ 201 and 202 require CoreCivic to pay all compensation due and owing to Plaintiffs and Class Members immediately upon discharge or within seventy-two hours of their termination of employment. Cal. Labor Code § 203 provides that if an employer willfully fails to pay compensation promptly upon discharge or resignation, as required by §§ 201 and 202, then the employer is liable for such "waiting time" penalties in the form of continued compensation up to thirty workdays.
>
> CoreCivic willfully failed to pay Plaintiffs and Class Members who are no longer employed by CoreCivic compensation due

upon termination as required by Cal. Labor Code §§ 201 and 202. As a result, CoreCivic is liable to Plaintiffs and former employee Class Members waiting time penalties provided under Cal. Labor Code § 203, plus reasonable attorneys' fees and costs of suit.

Owino asserted that CoreCivic violated a dozen provisions of the California Labor Code with respect to the members of the California Labor Law class. The motion for class certification then stated, "Plaintiffs' claims on behalf of the CA Labor Law Class for violations of the California Labor Code . . . all turn on a common legal question: whether ICE detainees that worked through the [Work Program] at CoreCivic's facilities in California are employees of CoreCivic under California law . . . ." Owino then discussed this question in depth.

CoreCivic has cited no precedent to suggest that Owino must specifically list the citation of each of the dozen provisions of the California Labor Code in the motion for class certification. Such an approach would exalt form over substance and ignore the fair notice Owino provided to CoreCivic throughout the certification proceeding. Rather, because Owino outlined these provisions substantively in the complaint, stated that "all" of the alleged violations of the Labor Code turn on a common question, and discussed the common question at length, Owino sufficiently referenced this matter before the district court.

### Conclusion

We affirm the district court's certification of all three classes. We hold that CoreCivic retains its personal jurisdiction defense and remand the personal jurisdiction question to the district court for consideration at the appropriate juncture.

**AFFIRMED.**

---

VANDYKE, Circuit Judge, with whom Judges CALLAHAN, BENNETT, R. NELSON, and BUMATAY join, and with whom Judge IKUTA joins except as to Part II-A, dissenting from denial of rehearing en banc:

In affirming certification of the nationwide class in this case, the panel committed two errors that merited en banc review. First, the panel created inter- and intra-circuit conflicts by eliminating the actual causation requirement for "forced labor" claims under the Victims of Trafficking and Violence Protection Act of 2000 (TVPA). Second, the panel transgressed the holding of *Wal-Mart Stores v. Dukes*, 564 U.S. 338 (2011), disregarding Rule 23's commonality requirement by concluding that a handful of declarations from detainees at only one of the defendant's 24 facilities was "significant proof" of the defendant's *nationwide* "policies and practices." In *Dukes*, the Supreme Court instructed that expert testimony, statistical evidence, and testimony from more than 100 individuals spread across the country were insufficient proof of the nationwide policy asserted in that case. Here, the plaintiffs did not present half

as much evidence as was provided in *Dukes*, yet the panel improperly found "significant proof" of a nationwide policy.

We should have taken the opportunity to correct this decision. Uncorrected, it will have sweeping implications for all civil TVPA lawsuits, class actions or otherwise, sowing confusion over whether actual causation is a required showing. It will also doubtless become the new rallying point for class counsel seeking to avoid the minimum commonality required by binding Supreme Court precedent. I respectfully dissent from the denial of en banc rehearing.

## I.

The U.S. government contracts with the defendant in this case, CoreCivic, Inc., to hold immigration detainees in 24 facilities across 11 states. Government regulations require immigration detainees to perform personal housekeeping tasks, but prohibit CoreCivic from requiring them to clean areas beyond "their immediate living areas." *Performance-Based National Detention Standards 2011* § 5.8(II), (V)(C). This case is a class challenge by two former detainees claiming that they and other detainees across all 24 facilities were forced to perform cleaning tasks beyond the personal housekeeping tasks allowed by those standards. *See Owino v. CoreCivic, Inc.*, 36 F.4th 839, 842 (9th Cir. 2022).

The named plaintiffs moved to certify a nationwide class consisting of all CoreCivic detainees detained after December 23, 2008, who were required under threat of discipline to clean areas of CoreCivic facilities beyond their cells. *See id.* at 843. To succeed on their motion, they needed to prove that "questions of law or fact common to the class" existed and that such common questions "predominate[d] over any questions affecting only individual members." Fed. R. Civ. P. 23(a)(2), (b)(3); *see*

*also Halliburton Co. v. Erica P. John Fund, Inc.*, 573 U.S. 258, 275 (2014) (requiring the plaintiffs to prove, "not simply plead," that "their proposed class satisfies each requirement of Rule 23").  The named plaintiffs argued that a common question stemmed from CoreCivic's policy requiring all its detainees to clean areas beyond their cells under threat of discipline and that this question predominated over any individualized questions.  Because they sought to prove a common question through a nationwide policy, the named plaintiffs needed to provide "significant proof" that this policy existed.  *Dukes*, 564 U.S. at 353 (citation omitted).  As evidence of CoreCivic's purported nationwide policy requiring all detainees to clean areas beyond their cells, the named plaintiffs proffered CoreCivic's written "Sanitation" and "Disciplinary" policies, plus the declarations of four detainees at one of CoreCivic's 24 detention facilities.

The district court considered whether the written policies unambiguously supported CoreCivic's interpretation and then rejected it because it "*is not clear* from the face of the policies" that the policies "do[] not require detainees to clean the common area," (emphasis added).  The court likewise found the policies ambiguous because "[t]here is no indication from the face of the policies that" only the detainees who participated in the voluntary work program ("VWP") were required to clean.  The district court's only discussion about who was required to clean under CoreCivic's written policies emphasized their ambiguity.  But because the named plaintiffs also offered the four detainee declarations, the court concluded that there was "significant proof" that CoreCivic had "*implemented* common sanitation and discipline policies," (emphasis added), across its 24 facilities.  And the court concluded that

because the Disciplinary Policy "could reasonably be understood to have subjected detainees to discipline for failure to comply with the uniform sanitation policy," CoreCivic "may have coerced detainees" into cleaning.

The district court also concluded that common questions about CoreCivic's class-wide "policy and practice" predominated over individualized questions. On this point, CoreCivic argued that questions about whether CoreCivic's conduct caused the class members individually to choose to labor for CoreCivic would predominate over any common question. The district court disagreed, concluding that liability under the TVPA attaches even if CoreCivic's actions did not cause the detainees to perform the labor. The court ruled instead that the TVPA requires plaintiffs to show only an "objectively, sufficiently serious threat of harm." Alternatively, the district court reasoned that, even assuming the TVPA requires a showing of causation, whether each individual class member felt coerced by CoreCivic's policies could be decided on a class basis by inferring whether a reasonable person would have felt coerced.

On appeal, our court affirmed certification. *See Owino*, 36 F.4th at 850. In doing so, the panel rejected CoreCivic's argument that questions about individual causation precluded predominance, never addressing either of our court's precedents holding that a showing of causation is required under the TVPA. *Compare id.* at 847, *with Martinez-Rodriguez v. Giles*, 31 F.4th 1139, 1150 (9th Cir. 2022), *and Headley v. Church of Scientology Int'l*, 687 F.3d 1173, 1179 (9th Cir. 2012). Rather, the panel held that no "subjective, individualized inquiry" into why each class member labored was necessary because the ostensibly "contrary language" in the TVPA requires only that a defendant's threats be objectively serious. *See id.* (citing 18

U.S.C. § 1589(c)(2) (requiring an objectively "serious harm")). Although cursory in its analysis, the necessary import of the panel rejecting CoreCivic's argument—by exclusively citing the TVPA's objectively serious harm requirement—is that the plaintiffs did not need to show that CoreCivic's actions caused them to labor.

The panel also concluded that the named plaintiffs proved the existence of a common question, locating that common question in "CoreCivic's company-wide policies and practices." *Owino*, 36 F.4th at 846. The panel relied on three things evincing the supposed nationwide common "policies and practices": (1) CoreCivic's written policies; (2) CoreCivic's employees' declarations interpreting those written policies; and (3) declarations by four former detainees that described practices they experienced and observed at a single facility. *See id.* at 845.

As to the first two types of evidence—CoreCivic's written policies and its interpretations thereof—the panel provided little analysis, briefly addressing them in two short paragraphs. *See id.* The panel was nonetheless clear that it relied decisively on its conclusion that CoreCivic's nationwide written policy "requires detainees" to perform a long list of cleaning duties. *Id.* The panel nowhere acknowledged, however, that its list was taken from CoreCivic's policy applicable only to "detainee[] *workers*," (emphasis added), which CoreCivic employees consistently explained meant not *all* detainees, but rather a subset of detainees who had affirmatively volunteered to participate in its paid VWP. Ignoring the district court's conclusion that the written policies are ambiguous, the panel held that the written policies required all detainees to clean and that, when combined with the four detainee declarations, they

constituted "significant proof" of a nationwide policy consistent with the plaintiffs' allegations.  *See id.*

Accordingly, the panel affirmed certification of the nationwide class.   Following CoreCivic's petition for rehearing, the panel amended its opinion in an attempt to clarify its rationale on the TVPA's causation requirement. Unfortunately, as discussed below, the amendment does not fix the panel's errors.

## II.

This case deserved en banc review for two independent reasons: (1) it creates inter- and intra-circuit conflict by eliminating the TVPA's actual causation requirement for civil forced labor claims; and (2) it holds that much less evidence of a nationwide policy than was present in *Dukes* is nonetheless "significant proof" of a nationwide policy, and therefore sufficient to certify a class.

## A.

The TVPA prohibits a person from obtaining labor from a victim by improper means.  *See* 18 U.S.C. § 1589(a).  A defendant who obtains forced labor may be held civilly liable.  *See id.*; 18 U.S.C. § 1595(a).[1]  But according to the panel decision in this case, the TVPA, in permitting "victim[s]" of "forced labor" to "recover damages," *id.*, is indifferent as to whether anyone *actually* forced someone else to labor.  *See Owino*, 36 F.4th at 847.  Instead, a plaintiff may satisfy the TVPA's causation requirement by showing that an abstract reasonable person would have labored because of the defendant's conduct.  Only by deeming actual

---

[1] A defendant who obtains or attempts to obtain forced labor may also be criminally punished.  *See* 18 U.S.C. §§ 1589(a), 1594(a).

causation unnecessary was the panel able to conclude that individualized causation inquiries would not predominate over common questions in the named plaintiffs' class action. *See id.*

The panel's causation conclusion is doubly wrong. First, it is wrong because it creates inter- and intra-circuit conflict by disregarding both our binding circuit precedent, *see, e.g.*, *Martinez-Rodriguez*, 31 F.4th at 1156 (requiring that the plaintiffs provide evidence that the defendant's conduct "proximately caused" the plaintiffs to labor), and the wisdom of our sister circuits' decisions that likewise require a showing of actual causation to prevail in a TVPA forced labor claim, *see, e.g.*, *United States v. Zhong*, 26 F.4th 536, 560 (2d Cir. 2022) (recognizing that unless the prosecution proves a defendant's actions "did, in fact, compel the … workers to remain working for [the defendant's company] when they otherwise would have left," the defendant "could not have 'provide[d] or obtain[ed]' their labor th[r]ough these actions or threats" (quoting § 1589(a))); *Menocal v. GEO Group, Inc.*, 882 F.3d 905, 918 (10th Cir. 2018) ("[P]laintiffs must prove that an unlawful means of coercion caused them to render labor.").[2]

---

[2] Similar to the panel's amended opinion, the Tenth Circuit in *Menocal* permitted causation to be inferred class-wide. *See* 882 F.3d at 918. But the Tenth Circuit still required actual causation by allowing the defendant to introduce evidence that individual class members were not coerced by the defendant's class-wide conduct. *See id.* at 921. Here, the panel acknowledged no room for a defendant to introduce evidence that individual class members did not labor because of its class-wide conduct, implying that the panel established a conclusive presumption that causation is satisfied for a TVPA claim through evidence of class-wide conduct that would cause a reasonable person to labor. No circuit has departed so far from the TVPA's actual causation requirement.

Second, even aside from the panel ignoring binding precedent, this case merited en banc review because the text of the TVPA clearly requires causation for a forced labor claim—which is why, until this case, our circuit and other circuits have required it. *See* 18 U.S.C. § 1589(a)(2), (4). The panel confused and conflated the TVPA's requirement that harms or threatened harms be *objectively serious* with the TVPA's separate requirement that such harms *actually cause* a victim to labor or provide services. Actual causation requires proof that the specific victim would not have labored but for the threats or harms. The TVPA requires both objectively serious harms and actual causation. The panel's error in eliminating the TVPA's causation requirement led the panel to wrongly affirm class certification. Because each class member here must individually prove causation, the panel erred in concluding that common questions predominated. *See Poulos v. Caesars World, Inc.*, 379 F.3d 654, 668 (9th Cir. 2004).

\* \* \*

The panel's elimination of the TVPA's causation requirement runs face-first into at least two of our precedents, as well as the decisions of our sister circuits that have addressed this issue. In our court's 2012 *Headley* decision, for example, lack of individualized causation is precisely what drove our court to affirm summary judgment in favor of the defendant. 687 F.3d at 1173. The plaintiffs in *Headley* argued that they were coerced into laboring by the defendant organization inflicting harm upon them, but our court affirmed summary judgment against the plaintiffs because the "record does not suggest that the defendant[] obtained the [plaintiffs'] labor 'by means of' those[harms]." *Id.* at 1180. The court instead concluded that "the record shows that the adverse consequences cited by the [plaintiffs]

are overwhelmingly not of the type that *caused* them to continue their work and to remain with the [organization]." *Id.* (emphasis added). And only months before the panel issued its decision in this case, our court again affirmed that a plaintiff can succeed in a forced labor claim only if he shows that the defendant's unlawful conduct "*caused* the [p]laintiff to provide the labor that [the defendant] obtained." *Martinez-Rodriguez*, 31 F.4th at 1150 (emphasis in original).

In holding that the named plaintiffs need not show that the defendant's conduct caused them to labor before stating a forced labor claim, the panel advanced a novel interpretation of the TVPA's prohibition on forced labor that no federal circuit had previously adopted: holding that a defendant may be civilly liable for forced labor when its conduct did not cause the plaintiff to labor. Three other circuits—five, if we count unpublished decisions—have either explained that a defendant's conduct must actually cause the victim to labor or relied on such causation to uphold a criminal conviction. *See, e.g.*, *Zhong*, 26 F.4th at 560 (2d Cir. 2022); *United States v. Toure*, 965 F.3d 393, 401–02 (5th Cir. 2020) (affirming a forced labor conviction as supported by sufficient evidence, in part, because the defendants' "conduct caused [the victim] to remain with the defendants because [the victim] faced threats of serious harm, or reasonably believed she would face serious harm, if she did not provide them with her labor and services"); *Menocal*, 882 F.3d at 918 (10th Cir. 2018); *see also United States v. Afolabi*, 508 F. App'x 111, 119 (3d Cir. 2013) (unpublished) (explaining that even if the "victims were not actually intimidated" by certain abuses, the victims' testimony that they labored because of the defendant's other illegal and improper conduct "was enough for a jury to find that the Government had satisfied its burden"); *Roman v.*

*Tyco Simplex Grinnell*, 732 F. App'x 813, 817 (11th Cir. 2018) (per curiam) (affirming in an unpublished opinion the district court's dismissal of a complaint because the plaintiff failed to "explain how [the defendant's] threats led to his forced labor" (citing *Headley*, 687 F.3d at 1179)).[3]

There is a good reason that all the circuits to address the question (we and five others) have uniformly concluded that the TVPA requires actual causation for forced labor claims: the plain text of the TVPA permits civil liability for "forced labor" only when a person obtains that labor "by means of" certain improper conduct, such as "*by means of* serious harm or threats of serious harm to that person or another person … [or] *by means of* any scheme, plan, or pattern intended to cause the person to believe that, if that person did not perform such labor or services, that person or another person would suffer serious harm or physical restraint." 18 U.S.C. § 1589(a)(2), (4) (emphasis added).

The "by means of" phrase that the TVPA invokes is well-recognized as requiring a causal relationship. *See, e.g.*, *Martinez-Rodriguez*, 31 F.4th at 1155 ("[T]he phrase 'by means of' refers to familiar principles of causation and requires a proximate causal link …."); *Sanders v. John Nuveen & Co., Inc.*, 619 F.2d 1222, 1225 (7th Cir. 1980) ("[T]he 'by means of' language in the statute requires some causal connection …."); *Jackson v. Oppenheim*, 533 F.2d 826, 830 (2d Cir. 1976) (explaining that a decision is "effected 'by means of'" an action if that action had "some

---

[3] Although some of these decisions arose in a criminal context, the convictions were for forced labor and the courts' reasoning would apply equally to a civil claim for forced labor.

causal relationship"—even if not a "decisive effect"—"to that decision").

In rejecting "CoreCivic's argument that the TVPA necessitates a subjective, individualized inquiry" into causation, the panel ignored the TVPA's "by means of" language and instead cited the TVPA's provision defining "serious harm" as an objectively serious harm. *Owino*, 36 F.4th at 847 (citing 18 U.S.C. § 1589(c)(2)). The panel was right that the particular provision it cited does not itself require actual causation. But the existence of the TVPA's requirement that harms and threatened harms be objectively serious does not somehow nullify the TVPA's separate requirement that a defendant obtain labor *by means of* such serious harm or threatened harm—the TVPA's causation requirement. In sum, a plaintiff who labored because a defendant threatened harm that would not cause a reasonable person to labor has no forced labor claim because he cannot show an objectively serious threat of harm. And likewise, a plaintiff who labored for a reason wholly unrelated to the defendant's harms or threatened harms has no claim—even if those harms or threatened harms were objectively serious—because he cannot show the defendant obtained the plaintiff's labor *by means of* those threats. The panel was wrong to conclude that plaintiffs in this latter category— plaintiffs who didn't labor because of the defendant's conduct—can succeed in bringing a forced labor claim.

The panel's belated attempt to address this problem by amending its opinion does not, unfortunately, fix it. The amended opinion does just as much damage to the TVPA's causation requirement for forced labor claims as its original opinion, just with different language. In its original opinion, the panel eliminated the TVPA's requirement that a plaintiff show individualized causation—that the defendant caused

the specific plaintiff to labor.  In its amended opinion, the panel acknowledges that the TVPA's "by means of" language requires *some form* of causation.  But then the panel immediately makes clear that it is really removing the TVPA's actual causation requirement by concluding that causation may be inferred class-wide through a generally applicable policy.  To make this leap, the panel must assume both that (1) every person in the class is reasonable and (2) the policy actually causes *every* reasonable person to labor.  But it is easily foreseeable that, even assuming plaintiffs' allegations of class-wide threats are true, some portion of the class would clean merely because they liked to live in a clean space.  It is reasonable to believe that many normal human beings would voluntarily sweep or wipe down furniture in common areas simply because they enjoy living in a clean environment.  The panel's new description of "causation" isn't *actual* causation, it is *probable* causation applied to an abstract reasonable person, and therefore isn't real causation at all.  Which brings us right back to the original opinion's conflation of the TVPA's objective standard with its requirement for individualized causation.  The panel cannot have it both ways: either the TVPA requires actual causation or it does not.  The opinion as now amended forswears it has eliminated causation, but if anything, it is now even clearer that the TVPA's requirement of *actual* causation no longer exists (or at least that panels of our court have taken inconsistent positions).

In any event, the panel's amendment leaves in place the original opinion's statement that the TVPA's objective standard means that the TVPA does not "necessitate[] a subjective, individualized inquiry." *Id.*  That incorrect statement of law remains on the books, and, despite the amended opinion's attempt to have it both ways, will

continue—at odds with our own prior precedent—to communicate that actual causation is not required by the TVPA.

By ignoring in- and out-of-circuit precedent and the text of the TVPA, the panel created both intra- and inter-circuit conflict on whether a plaintiff must show actual causation for a forced labor claim under the TVPA.  The panel's removal of the TVPA's causation requirement will plague our cases going forward.  The court should have granted rehearing en banc to eliminate a conflict in our precedent and restore the correct interpretation of the TVPA.

## B.

Even if the panel had not created confusion through its incorrect conclusion that the TVPA requires no proof of actual causation, the panel still erred in certifying this class. Rule 23 requires that the movant prove the class shares a common question of law or fact.  *See Halliburton Co.*, 573 U.S. at 275.  The panel concluded that the nationwide class here shared a common question based on the declarations of four detainees, all from the same facility, together with corporate policies that are at best ambiguous as to the misconduct claimed in those declarations.  *See Owino*, 36 F.4th at 845.  The panel thus created a new rule of commonality that authorizes class certification so long as a movant can offer anecdotal evidence of misconduct limited to a small fraction of a class, coupled with written policies that at most are unclear about the complained-of conduct. That rule is inconsistent with Rule 23 and *Dukes*, and charts an attractive and sure-to-be-followed path for those seeking an easy class action certification.

Under *Dukes*, to prove commonality through a policy, a plaintiff must offer "significant proof" that the complained-

of practice exists class-wide.  564 U.S. at 353.  Although the Supreme Court declined to offer a bright line rule for what counts as "significant proof," we see clearly in *Dukes* what *does not* suffice: the combination of (1) an official policy of discretion that can be used for unlawful activity, (2) expert testimony that the permissive policy is used for unlawful activity, (3) statistical evidence merely suggesting unlawful activity, and (4) testimony of the unlawful activity from more than one-hundred potential class members *spread across multiple locations*.  *See id.* at 353–58.

Since the plaintiffs in *Dukes* failed to clear the commonality threshold, a fortiori the named plaintiffs in this case failed.  Here, the second and third categories above were completely missing.  And the first category of evidence was no better here than it was in *Dukes* because, as the district court acknowledged, the policies relied on by the named plaintiffs were at most "not clear" as to the misconduct alleged.  And this case is worse than *Dukes* as to the fourth category because the plaintiffs' testimony here is limited to one out of dozens of locations.

The written policies in this case merit more discussion because, while the panel's analysis of those policies is frustratingly brief, it is nonetheless clear that the panel put decisive weight on those policies.  The named plaintiffs attempted to prove that CoreCivic has a policy requiring all detainees to "clean" the common living areas and to threaten those who refuse with discipline.  They presented two written policies that the plaintiffs contend require "all detainees" to clean the common living areas or suffer disciplinary action.  But the policies the named plaintiffs cited do not say that; rather, only "detainee[] *workers*" must clean the common living areas and detainees risk disciplinary action only if they refuse to clean their

"assigned living area[s]," (emphasis added).  At best, these policies are ambiguous about the very thing the named plaintiffs needed to prove: the duties of "[a]ll detainees." Ambiguity is not "significant proof."  *Id.* at 353.

The first policy the named plaintiffs cited was the Sanitation Policy.  That policy distinguishes the duties of "[a]ll detainees" from the duties of "detainee[] workers." "All detainees … are responsible for maintaining the common living area in a clean and sanitary manner."  But only "detainee[] workers" clean those areas.  CoreCivic officials uniformly testified that the "workers" referenced in the Sanitation Policy are the participants in its voluntary work program.  Moreover, because only workers "clean[]," the policy cannot plausibly mean that "all detainees[]" must clean the common living areas.  To conclude otherwise renders superfluous the policy's distinction between "all detainees" and "detainee workers."  *See DaVita Inc. v. Amy's Kitchen, Inc.*, 981 F.3d 664, 674 (9th Cir. 2020) (presuming that a difference in language carries a difference in meaning); *Rainsong Co. v. FERC*, 151 F.3d 1231, 1234 (9th Cir. 1998) (explaining that interpretations rendering language in a statute or regulation superfluous "are to be avoided" (citation omitted)).

The district court found the Sanitation Policy ambiguous.  Because the panel's task was to review for abuse of discretion, it was obligated to defer to this finding unless it was clearly erroneous.  *See B.K. by next friend Tinsley v. Snyder*, 922 F.3d 957, 966 (9th Cir. 2019).  That finding was not clearly erroneous, and the panel was thus presented with an ambiguous written policy.  An ambiguous policy, however, is not materially different than the policy that was insufficient in *Dukes*: both policies might *allow* the complained-of misconduct, but neither *require* it.

The second written policy the named plaintiffs cited was the Disciplinary Policy, which prohibits detainees from "[r]efus[ing] to clean assigned living area[s]."  The Sanitation Policy clarifies that the "assigned living areas" are the detainees' personal cells and contrasts those cells with the "common living area."  But if the "assigned living area" that the Disciplinary Policy punishes detainees for not cleaning is the detainees' personal cells, then this policy does not require any cleaning that the named plaintiffs claim was improper.  After all, the named plaintiffs had not attempted to certify a class of detainees forced to clean their own cell and have never contended that such a requirement is problematic.  This policy is thus, like the Sanitation Policy, unhelpful to proving that all CoreCivic detainees were required by any class-wide written policy to clean the common living area.

In *Dukes*, the plaintiffs at least offered evidence of an official policy of discretion that permitted the unlawful activity.  Here, it is a stretch to read CoreCivic's written policies as even *permitting* the conduct complained of by the named plaintiffs.  The facilities could require "[a]ll detainees" to clean common living areas only by reading "all detainees" to mean the same thing as "detainee workers" and thus intentionally obfuscating the language of the Sanitation Policy.  The most that can be said about CoreCivic's written policies is that, at best, they might *permit* the complained-of practice.  This is what the district court concluded.  But that is clearly not enough under *Dukes* to suffice as "significant proof" of a class-wide policy *requiring* all detainees to clean.

Beyond the written policies, the named plaintiffs' only other evidence to satisfy their burden of "significant proof" of a common policy was their four declarations from detainees—all housed at the same, single facility.  That is of

no help to the named plaintiffs, because the named plaintiffs' declarations merely provide anecdotal support indicating that CoreCivic may have had an *unwritten* policy requiring all detainees to clean the common living area *at that one facility*. Four declarations from one of 24 facilities cannot provide "significant proof" of an unwritten policy that was applied to thousands, and potentially "hundreds of thousands," of detainees across all CoreCivic facilities. Because these four declarations were "concentrated in only" one facility, the other 23 facilities were left with no "anecdotes about [CoreCivic's] operations at all." *Dukes*, 564 U.S. at 358. The panel could not properly assume that one facility's unwritten practice was adopted and applied in every one of CoreCivic's other facilities. And the named plaintiffs offered no evidence whatsoever that it was, falling woefully short of their burden of "significant proof" of a *class-wide* policy.

The panel's opinion ignored these serious problems. It did not engage with the different sections of the Sanitation Policy or consider the testimony from CoreCivic's employees. Instead, the panel referenced portions of the Sanitation Policy that apply only to "detainee workers"— without even acknowledging that the policy distinguishes between "detainee workers" and "all detainees"—and concluded that the Sanitation Policy, when supplemented with the four detainee declarations, evinced a class-wide policy requiring all detainees to labor. *See Owino*, 36 F.4th at 845. The panel also read the Sanitation Policy to require detainees to "undertake sundry other cleaning responsibilities across the facility," a requirement not appearing in the policy. *Id.* In its short two-paragraph analysis, the panel applied a new rule that flips the script on the *Dukes* commonality rule: a movant for class certification

must simply provide some class-wide official policy—however ambiguous as to the claimed misconduct—and a few declarations indicating that the defendant engaged in misconduct somewhere, sometime.

Ultimately, the panel's new rule takes us down a familiar road where the seasoned traveler can easily predict the destination. In 2004, a court in the Northern District of California certified a class of "at least 1.5 million women" who were or had been employed by Wal-Mart. *Dukes v. Wal-Mart Stores, Inc.*, 222 F.R.D. 137, 142, 188 (N.D. Cal. 2004). These plaintiffs sought monetary damages and equitable relief for discrimination in pay and promotions. *See id.* at 141. After first affirming in a panel opinion, we went en banc and affirmed again, holding that the plaintiffs proved that the nearly 1.5 million-member nationwide class shared a common question. In *Dukes* we had *more* proof of class-wide conduct than the panel had here: we relied on a company-wide policy giving managers discretion in employment decisions, expert testimony suggesting that Wal-Mart's culture prejudiced women, statistical disparities between promotions of men and women, and testimony from 120 employees located in different stores nationwide saying they had experienced discrimination. *Dukes v. Wal-Mart Stores, Inc.*, 603 F.3d 571, 600–13 (9th Cir. 2010) (en banc). That was enough for us.

It was not enough for the Supreme Court. The Court unanimously reversed us, with the majority holding that we erred in concluding that there was even a single common question. The Court reminded us that "there is a wide gap between" an individual's alleged injury, inflicted through a "company … policy," and "the existence of a class of persons who have suffered the same injury [such] that" the individual and class claims share "common questions."

*Dukes*, 564 U.S. at 352–53 (quotation omitted). And the Court reminded us that a common question can arise from a corporate policy only through "significant proof." *Id.* at 353. Because our opinion affirming the class certification relied solely on an irrelevant policy, immaterial expert testimony, and anecdotal testimony, the Court reversed. *See id.* at 354–60.

I would say that the panel here repeated our error in *Dukes*, but it did worse. At least in *Dukes*, we had anecdotal evidence from *multiple* locations nationwide. We also had statistical evidence and expert testimony that we do not have here. And in *Dukes*, we could rely on an official policy that at least implicitly permitted the unlawful conduct. The panel affirmed in this case by relying solely on anecdotal evidence from one of dozens of locations, and corporate policies that are at best ambiguous on whether CoreCivic had a "policy" that required detainees to labor. *See Owino*, 36 F.4th at 845–46. Our court should have granted rehearing en banc.